HORACE J. BOWER *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD.

Norfolk.   October 5, 1984. — December 6, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Retirement. Words*, "Regular compensation."

For purposes of determining the retirement allowance under G. L. c. 32,
§ 7 (2) (*a*) (*ii*), of a municipal employee who had been retired as the
result of an accidental disability, the employee's "regular compensation"
was to include night differential pay regularly earned by him on recurrent
night shifts. [428-429]

CIVIL ACTION commenced in the Superior Court Department
on March 12, 1981.

The case was heard by *Joseph S. Mitchell, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Vincent L. DiCianni*, Assistant Attorney General, for the
defendant.

*Dennis R. Brown* for the plaintiff.

NOLAN, J. Horace Bower was a fire fighter for the town of
Wellesley for thirty years. Because of a heart condition, his
application for accidental disability retirement was approved
by the Wellesley retirement board (board), and he retired on
September 11, 1979. However, his retirement allowance was
calculated without including night shift differential pay. He
appealed to the Contributory Retirement Appeal Board
(CRAB), which affirmed the decision of the board. Pursuant
to a petition for review under G. L. c. 30A, § 14, a judge of
the Superior Court reversed the decision of CRAB. An appeal
was taken to the Appeals Court, and that court, in a summary
disposition under Appeals Court Rule 1:28, as amended, 10
Mass. App. Ct. 942 (1980), reversed the judgment of the

Superior Court. *Bower* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1107 (1983). We allowed the plaintiff's application for further appellate review. G. L. c. 211A, § 11. We affirm the judgment of the Superior Court.

The narrow question is whether the "regular compensation" on which Bower's retirement allowance was computed should have included night shift differential payments, which were first required to be paid as of July 1, 1977, as a result of a collective bargaining agreement. The board, CRAB, and the Appeals Court decided that the differential payments should not be included. The Superior Court judge entered a judgment which ordered inclusion of the differential in the recomputation of Bower's retirement allowance. Though no payroll deductions have been taken based on the night shift differential, it has been stipulated that "appropriate deductions will be taken retroactively to July 1, 1977" if there is a ruling in favor of Bower.

A person like Bower who qualifies for an accidental disability retirement is entitled to "[a] yearly amount of pension equal to seventy-two per cent of the annual rate of his regular compensation on the date such injury was sustained or such hazard was undergone, or equal to seventy-two per cent of the average annual rate of his regular compensation for the twelve-month period for which he last received regular compensation immediately preceding the date his retirement allowance becomes effective, whichever is greater." G. L. c. 32, § 7 (2) (*a*) (*ii*), as amended by St. 1970, c. 644, § 1.[1] The dispositive phrase is "regular compensation," which at the time of Bower's retirement was defined in G. L. c. 32, § 1 (with immaterial deletions), as "salary, wages or other compensation in whatever form, . . . not including bonus or overtime." G. L. c. 32, § 1, as amended through St. 1973, c. 279.[2] This section further

---

[1] The 1982 amendment to G. L. c. 32, § 7, made no changes in the quoted language. St. 1982, c. 630, § 18.

[2] The 1979 amendment rewriting the definition of "regular compensation" in G. L. c. 32, § 1, made no material changes in the language quoted in the text. St. 1979, c. 681.

provided that, in the case of police officers and fire fighters, "money paid for holidays shall be regarded as regular compensation rather than as overtime."

In wrestling with the issue whether "regular compensation" as defined in the statutory language quoted above included early retirement incentive payments agreed to be made to Boston school administrators who qualified, we recognized in *Boston Ass'n of School Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981), that the "expression ['regular compensation'] seems to us to point to recurrent or repeated amounts of compensation not inflated by extraordinary ad hoc payments. . . . [M]oreover 'regular' as it modifies 'compensation,' imports the idea of ordinariness or normality as well as the idea of recurrence. All this contrasts with 'overtime' and with the compendious 'bonus' which are to be excluded from the compensation that figures in computing retirement benefits."

The night differential pay is "regular," "ordinary," and "normal," within the meaning of our decision in *Boston Ass'n of School Adm'rs & Supervisors, supra.* Night shift differential payment is additional compensation paid to those who work the shift which begins at 6 P.M. and ends at 8 A.M. Bower was regularly assigned to work two nighttime shifts on a recurrent eight-day cycle. Therefore, night differential pay could hardly be called "extraordinary ad hoc payments." *Id.*

Moreover, in terms of being "regular," "ordinary," and "normal," night differential pay is closer to holiday pay, which is included in "regular compensation" under G. L. c. 32, § 1, than it is to "bonus" and "overtime" payments, which are expressly excluded.

For these reasons, we conclude that the night differential pay earned by Bower should be included as "regular compensation" in the computation of his retirement allowance.

*Judgment of the Superior
Court affirmed.*