KENNETH C. PELONZI & another[1] *vs.* RETIREMENT BOARD OF
BEVERLY & another.[2]

Essex. April 8, 2008. - May 21, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Retirement. Public Employment,* Retirement benefits. *Municipal Corporations,*
Pensions. *Contract,* Retirement. *Statute,* Construction. *Words,* "Regular
compensation."

In a civil action seeking declaratory and injunctive relief from a decision of a
municipal retirement board that the value of the retiree plaintiff's personal
use of an automobile, furnished by the plaintiff's municipal employer dur-
ing his tenure, did not qualify as "regular compensation," as defined in
G. L. c. 32, § 1, for purposes of calculating the retirement allowance to
which the plaintiff was entitled, the judge erred in granting summary judg-
ment in favor of the plaintiff, where the automobile was not intended to
compensate the plaintiff for his service to the city, but rather was given to
him to use in connection with his professional duties, with authorization to
use it for personal reasons, since he was "on-call" in the event of an
emergency; and where the statutory scheme was devoid of any indication
of a legislative intent to include within the definition of "regular compensa-
tion" an employer-supplied automobile that was required by the fundamental
nature of an employee's job. [478-482]

CIVIL ACTION commenced in the Superior Court Department on
June 23, 2003.

The case was heard by *Patrick J. Riley,* J., on motions for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael Sacco* for the defendant.

*James J. Arguin,* Assistant Attorney General, for Contributory
Retirement Appeal Board.

*John M. Collins* for Kenneth C. Pelonzi.

*Judith A. Corrigan* (*Barbara J. Phillips* with her) for Public
Employee Retirement Administration Commission.

---

[1] Public Employee Retirement Administration Commission (PERAC),
intervener.

[2] Contributory Retirement Appeal Board (CRAB), intervener.

GREANEY, J. This case requires us to decide whether personal use of an automobile, furnished by the city of Beverly (city) to the plaintiff during his tenure as the city's commissioner of public safety and chief of the fire department, qualifies as "[r]egular compensation," as that term is defined by G. L. c. 32, § 1, for purposes of calculating the retirement allowance to which the plaintiff is entitled. The Beverly retirement board (board) concluded that the plaintiff's personal use of the automobile did not so qualify. The plaintiff commenced an action in the Superior Court against the board, seeking declaratory and injunctive relief. Considering the parties' cross motions for judgment on the pleadings, a judge in the Superior Court disagreed with the conclusion arrived at by the board and ordered that judgment enter (1) declaring that the board shall forthwith include the personal use value of the automobile in calculating the plaintiff's monthly retirement pension; and (2) directing the board to pay the plaintiff all amounts wrongly withheld, from December 1, 2002, to the present, plus interest. The board appealed, and we transferred the case here on our own motion. We now vacate the judgment.

1. There is no dispute as to the relevant facts. On July 30, 1997, the plaintiff entered into a contract with the city to serve as the city's commissioner of public safety, while retaining his former position as chief of the city's fire department. The contract stated, in relevant part:

> "The City shall provide a vehicle for use by the Commissioner and pay for all attendant operating and maintenance expenses and insurance. Said vehicle is to be used by the Commissioner in connection with the performance of his duties as Commissioner and for his professional growth and development. It may be used by the Commissioner for personal reasons, since the Commissioner is 'on-call' in the event of emergency. The Commissioner will be responsible for any retirement contributions resulting from the availability and use of such vehicle."

The plaintiff served as the city's commissioner of public safety for approximately five years. He retired at the age of fifty-seven, on September 13, 2002, after thirty-two years of credit-

able service as a public employee. His application to receive a superannuation retirement allowance was calculated pursuant to G. L. c. 32, § 5 (2) (a),[3] in conformance with written guidelines issued by the public employee retirement administration commission (PERAC), which has directed that "regular compensation" should include the value of a public employee's authorized personal use of an employer-supplied automobile.[4] The application was approved by the board, and the plaintiff began receiving monthly retirement benefits of $6,835.87.[5] In November, 2002, relying on newly released decisions by the Contributory Retirement Appeal Board (CRAB) deciding the same issue in similar cases, the board determined that the personal use value of an employer-supplied vehicle should not be included as "regular compensation" and, accordingly, notified the plaintiff

[3]Section 5 (2) (a) of G. L. c. 32 sets forth the basic formula for computing a member's superannuation retirement allowance, which is a factor of three components: (1) the member's age at retirement; (2) the number of years of service; and (3) the average annual rate of "regular compensation received by such member[] during any period of three consecutive years of creditable service" or during the "last three years of creditable service preceding retirement," whichever is greater.

[4]On January 5, 2001, PERAC issued a memorandum that instructed retirement boards to consider "the value of IRS-defined personal use of an employer-supplied motor vehicle as regular compensation." The memorandum also stated that "[p]ursuant to [F]ederal and [S]tate law, an employee's use of an employer-provided vehicle for commuting or personal use is fringe benefit income. As such, the value of that commuting and personal use must be included on an employee's W2 tax form." The memorandum issued by PERAC also instructed that certain vehicles, such as marked police or fire vehicles, were exempt from the Internal Revenue Service (IRS) fringe benefit rules, and as such, the personal use of those vehicles was not subject to taxation. The memorandum advised retirement boards that, in keeping with the IRS rules, the personal use of exempt vehicles could not be considered regular compensation. In a subsequent memorandum, PERAC clarified that it would "allow the value of personal use of an exempt vehicle to be regular compensation" in certain circumstances.

[5]It appears undisputed that the plaintiff has paid retirement deductions, for the relevant period, on the value of his personal use of the automobile, but the record is unclear as to when the payment, or payments, occurred. The tax status of the value of the use of the automobile is also unclear in the record, but see note 4, supra. Neither of these considerations matters. The payment of retirement deductions on the value of the personal use of the automobile, or the tax status of that use, is not determinative of whether the use falls within the definition of "[r]egular compensation," G. L. c. 32, § 1, for purposes of calculating an applicant's retirement benefit. See Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 659-660 (2006), and cases cited.

by letter that his monthly retirement benefits would be diminished by $327.07, that portion of his pension based on the value of his personal use of the automobile.

The plaintiff sought an administrative appeal from the board's decision, pursuant to G. L. c. 32, § 16, but was informed by CRAB that a hearing on his appeal would not take place for approximately eleven or twelve months. The plaintiff then filed a complaint in the Superior Court seeking declaratory and injunctive relief against the board.[6] PERAC moved to intervene as a plaintiff, and CRAB moved to intervene as a defendant. As has been stated, a judge in the Superior Court concluded that the board had erred, allowed the plaintiff's motion for judgment on the pleadings, and denied the board's cross motion.[7] The only dispute before us is one of statutory interpretation: whether the term "regular compensation," as defined by the Legislature in G. L. c. 32, § 1, encompasses the value of the plaintiff's personal use of the automobile supplied by the city during his years of employment as commissioner.[8]

2. We first look to the language of the statute. See *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 345-346 (1995). See also *Simon* v. *State Examiners of Electricians*, 395

---

[6]The plaintiff subsequently learned that the division of administrative law appeals would not schedule a hearing on his appeal until after the resolution of similar cases already pending in the Superior Court.

[7]The judgment entered in the Superior Court is fully described in the first paragraph of this opinion.

[8]PERAC and CRAB both point out that we should grant substantial deference to an agency's reasonable interpretation of a statute within its charge, and accord due weight to the expertise, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred on it. See *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618-619 (1997); *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). See also *Brackett* v. *Civil Serv. Comm'n*, 447 Mass. 233, 241-242 (2006), and cases cited. Each entity, not surprisingly, contends that its authority to determine what is allowable as "regular compensation" is firmly established, and therefore, this court should defer to its position on the issue. While we give weight to the experience of both PERAC and CRAB, here they offer conflicting interpretations. Ultimately, the issue is one of statutory interpretation, which presents a question of law for the court. See *Plymouth* v. *Civil Serv. Comm'n*, 426 Mass. 1, 5 (1997); *Boston Police Superior Officers Fed'n* v. *Labor Relations Comm'n*, 410 Mass. 890, 892 (1991); *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). We are required to overturn agency decisions that are inconsistent with G. L. c. 32, § 1. See *Plymouth* v. *Civil Serv. Comm'n, supra.*

Mass. 238, 242 (1985). General Laws c. 32, § 1, provides, in relevant part:

> " 'Regular compensation' . . . . shall mean the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement . . . ."

This language is "straightforward and unambiguous." *Bulger* v. *Contributory Retirement Appeal Bd.*, 447 Mass. 651, 658 (2006). The term "[r]egular compensation" broadly denotes ordinary, recurrent, or repeated payments not inflated by any "extraordinary ad hoc" amounts such as bonuses or overtime pay. *Id.*, quoting *Bower* v. *Contributory Retirement Appeal Bd.*, 393 Mass. 427, 429 (1984). See *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 340-341 (1981). Thus, in the *Bulger* case, we determined that monthly housing allowance payments were "recurrent," "regular," and "ordinary" remuneration for the services of William M. Bulger as the president of the University of Massachusetts. *Bulger* v. *Contributory Retirement Appeal Bd.*, *supra*. In addition, the language "salary, wages or other compensation in whatever form," demonstrates "a legislative intent to include the many distinct ways in which individuals are paid for their services." *Id.*, citing *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 69 (2000). We made clear in the *Bulger* case that, as wages have a meaning apart from salary, so "other compensation in whatever form" must be understood to encompass all other forms of recurring payments for an employee's services, so long as the payments comport with the other requirements of § 1. See *Bulger* v. *Contributory Retirement Appeal Bd.*, *supra*, citing *Hallett* v. *Contributory Retirement Appeal Bd.*, *supra* at 68-69.

The *Bulger* case was decided after the judge made his decision. Guided by what was said in the same cases cited by the *Bulger* court, however, the judge recognized, correctly, that the personal use value of the city-supplied automobile would qualify as a

"regular" benefit, in the sense that it was recurring and not incurred as a bonus or in lieu of payment for special services. The judge was incorrect, however, to conclude that the benefit was "compensation . . . for the individual service" of the plaintiff. G. L. c. 32, § 1. "Unless it is a technical term, 'words and phrases [in a statute] shall be construed according to [their] common and approved usage.' " *Hallett* v. *Contributory Retirement Appeal Bd.*, *supra* at 68, quoting G. L. c. 4, § 6, Third. See *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984) ("we need not look beyond the words of the statute where the language is plain and unambiguous"). Compensation, in the context of § 1, can only be understood to mean payment for services rendered to an employer.

Here, the plaintiff's employment agreement with the city expressly required that he be "on-call" for emergency response at all times. Notwithstanding contrary assertions in the plaintiff's brief, it appears that the city contemplated the automobile as a tool, or piece of equipment, that would enable the plaintiff to perform his job more effectively. Although the characterization in an employment agreement does not determine, as matter of law, whether a job benefit falls within the scope of "regular compensation," see *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, *supra* at 341, the language of a particular employment agreement may be relevant, as in these circumstances, to demonstrate mutual expectations of an employer and employee. We conclude that the automobile was not intended to compensate the plaintiff for his service to the city as commissioner, but rather given to him to use in connection with his professional duties, with authorization to use it "for personal reasons, since the [plaintiff] is 'on-call' in the event of emergency."

The housing allowance payments at issue in the *Bulger* case share no common attributes with the plaintiff's personal use of the city-supplied automobile. As fully explained in the *Bulger* decision, the housing allowance payments were never intended to be used for housing. The university trustees "were fully aware that Bulger would continue to live in his home in the [S]outh Boston section of Boston throughout his tenure as president of the university. According to the chairperson of the

trustees who was responsible for negotiating Bulger's compensation package in 1998, the trustees felt at that time that Bulger had done an outstanding job as university president and considered Bulger's acceptance of a housing allowance as an important enhancement of his compensation package that would motivate his interest in the presidency for an additional five-year term. In view of these circumstances, treating the housing allowance as anything other than 'other compensation in whatever form' would render that term in the statute meaningless." *Bulger v. Contributory Retirement Appeal Bd.*, *supra* at 658-659. To import our conclusion in the *Bulger* decision to the facts of this case would be contrary to our reasoning in the *Bulger* decision, as well as to the plain language of G. L. c. 32.

The *Bulger* court recognized that "other compensation in whatever form" ordinarily denotes "recurring *payments* for an employee's services" (emphasis added). *Id.* at 658. See *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, *supra* at 341 (" 'salary, wages or compensation in whatever form' . . . takes its color of meaning from 'salary' and 'wages' "). Indeed, the only noncash form of regular compensation expressly identified by the Legislature in § 1 is "evaluated maintenance [in the form of full or partial boarding and housing] as provided for in [G. L. c. 32, § 22 (1) (*c*)]."[9] See G. L. c. 32, § 22 (1) (*b*)-(*c*) (directing disbursing officer to withhold employee's retirement deductions from regular cash payments). The Legislature did not include any similarly explicit directions for the treatment of the noncash benefit associated with an employee's personal use of an employer-supplied automobile. See *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 620 (1997), quoting *LaBranche* v. *A.J. Lane & Co.*, 404 Mass. 725, 729 (1989) ("[t]he fact that the Legislature specified one exception . . . strengthens the inference that no other exception was intended"). See also *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687 (1986) ("statutory expression of one thing is an implied exclusion of other things omitted from the statute").

---

[9]Consistent with the statute, regulations implemented by PERAC likewise identify only one form of noncash regular compensation, namely, "noncash maintenance allowances in the form of full or partial boarding and housing, as provided in [G. L.] c. 32, § 22 (1) (*c*)." 840 Code Mass. Regs. § 15.03(1)(d)(2) (2006).

We conclude that the plaintiff's personal use of the city-supplied automobile during his tenure as the city's commissioner of public safety and fire chief may not be included as "regular compensation" in the calculation of his retirement allowance.

The Legislature has carefully set out what may be included in the calculation of a public employee's retirement allowance. Although § 1's definition of "[r]egular compensation" may be broad, there is nothing in the entire statutory scheme that would indicate a legislative intent to include an employer-supplied automobile that is required by the fundamental nature of an employee's job. Employers routinely supply employees with other noncash job related accessories and benefits (e.g., cellular telephones, personal computers, facsimile machines, parking spaces) to enable their employees to perform their jobs more efficiently, and may authorize the personal use of these benefits as a matter of convenience. See *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981) (definition of regular compensation intended to "safeguard against . . . adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems"). Our decision will ensure "a minimum level of predictability in computing pension payments made out of the retirement system." *Zelesky* v. *Commissioner of the Div. of Pub. Employee Retirement Admin.*, 30 Mass. App. Ct. 106, 109 (1991).

3. The orders entered in the Superior Court allowing the plaintiff's motion for judgment on the pleadings, and denying the board's cross motion for judgment on the pleadings, are vacated. The judgment entered in the Superior Court declaring that the board shall include the personal use value of an employer-supplied vehicle in calculating the plaintiff's pension, and directing the board to pay the plaintiff all previously suspended amounts, plus interest, is vacated. A new judgment is to enter declaring that the value of the personal use of the plaintiff's automobile is not includable as part of his "regular compensation" under G. L. c. 32, § 1.[10]

*So ordered.*

---

[10]The original judgment entered in the Superior Court included an order denying the plaintiff's request for attorney's fees and costs. That order is not part of this appeal.