HERBERT KEARNS vs. STATE BOARD OF RETIREMENT
& another.[1]

No. 12-P-174.

Suffolk. September 6, 2012. - October 19, 2012.

Present: GRASSO, KANTROWITZ, & GRAHAM, JJ.

*Contributory Retirement Appeal Board. State Police. Public Employment,* Accidental disability retirement, Police. *Administrative Law,* Agency's interpretation of statute, Judicial review. *Words,* "Regular compensation."

A bonus paid to active-duty police officers who pass a physical fitness test does not qualify as "regular compensation," as defined in G. L. c. 32, § 1, for purposes of calculating a claimant's accidental disability retirement benefits pursuant to G. L. c. 32, § 90A, where, although the bonus is incorporated into base salary and almost all officers eventually pass the test, it operates as a contract-based incentive; and where the bonus is the sort of "adventitious" payment under a contract negotiated by a public entity other than the one responsible for finding funding for continuing retirement benefits against which the definition of "regular compensation" in G. L. c. 32, § 1, acts as a safeguard. [684-686]

CIVIL ACTION commenced in the Superior Court Department on March 25, 2010.

The case was heard by *D. Lloyd Macdonald,* J., on a motion for judgment on the pleadings.

*Crystal L. Matthews* for State Board of Retirement.

*Paul T. Hynes* for the plaintiff.

GRAHAM, J. The State Board of Retirement (board) appeals from a judgment on the pleadings entered in the Superior Court reversing a decision of the Contributory Retirement Appeal Board (CRAB). The CRAB decision denied the claimant, Herbert Kearns, a retired police officer, an increase in retirement benefits pursuant to G. L. c. 32, § 90A, to account for a bonus paid to active-duty police officers who pass a physical fitness

_____

[1]Contributory Retirement Appeal Board.

test. On appeal, the board argues that the Superior Court judge erred in concluding that the claimant was entitled to an increase in his retirement benefits because the physical fitness bonus does not qualify as "regular compensation" as defined in G. L. c. 32, § 1. We agree and accordingly reverse.

1. *Procedural and factual background.* We recount the undisputed facts. The claimant, who was born in 1924, began service as a Metropolitan District Commission (MDC) police officer in 1951. In January, 1971, while performing his official duties, he suffered a serious injury to his back. On January 30, 1971, he began receiving accidental disability retirement benefits equal to seventy-two percent of his regular compensation at the time of the injury. Thereafter, in accord with G. L. c. 32, § 90A, the claimant's retirement benefits periodically were increased.[2]

By letter dated April 12, 2007, the claimant requested that the board increase his retirement benefits to reflect bonuses paid to active-duty State police officers who pass a physical fitness test. The board denied the claimant's request. On September 7, 2007, the claimant appealed the board's decision to CRAB. CRAB, in turn, referred the matter to a Division of Administrative Law Appeals magistrate for a hearing. In a decision dated December 4, 2009, the magistrate reversed the board's decision, concluding that the claimant's retirement benefits should be increased to reflect the two and one-half percent bonus paid to active-duty State police officers who pass the physical fitness test. On January 13, 2010, the board filed objections to the magistrate's decision with CRAB. After a hearing, in a decision dated February 24, 2010, CRAB reversed the magistrate's decision, affirmed the board's initial decision, and concluded that the claimant was

---

[2]Before 1991, these periodic increases were limited to an amount not exceeding one-half of the rate of regular compensation payable to an active-duty MDC police officer of the same grade or classification that the claimant held upon retirement. In December, 1991, however, the Legislature consolidated the MDC police force and the State police. St. 1991, c. 412, § 1. Thereafter, MDC officers on accidental disability retirement were to have their retirement allowances periodically increased to an amount not exceeding one-half of the rate of regular compensation payable to a State police officer in a comparable grade or classification (as determined by the personnel administrator). G. L. c. 32, § 90A, as amended through St. 1991, c. 412, § 41.

not entitled to the increase in retirement benefits because the physical fitness bonus was not "regular compensation" as defined in G. L. c. 32, § 1.

On March 25, 2010, the claimant sought judicial review of CRAB's decision in the Superior Court pursuant to G. L. c. 30A, § 14, and thereafter moved for judgment on the pleadings on October 1, 2010. After a hearing, a judge of the Superior Court granted the claimant's motion for judgment on the pleadings, concluding, as the magistrate did, that the claimant's benefits should be increased to reflect the physical fitness bonus.

2. *Discussion.* The only dispute before us is one of statutory interpretation: whether the term "regular compensation," as defined by the Legislature in G. L. c. 32, § 1, encompasses the bonus paid to officers who pass a physical fitness test. See *Pelonzi* v. *Retirement Bd. of Beverly*, 451 Mass. 475, 478 (2008). In conducting our review in this case, we are mindful of the principle that "[w]here an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 82 (2004). Further, in accord with the standards of G. L. c. 30, § 14(7), we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." *Brackett* v. *Civil Serv. Commn.*, 447 Mass. 233, 241-242 (2006), quoting from *Iodice* v. *Architectural Access Bd.*, 424 Mass. 370, 375-376 (1997). At the same time, we exercise de novo review of legal questions, and if the agency's view of the statutory language "is inconsistent with governing law," we cannot uphold its decision. *Plymouth* v. *Civil Serv. Commn.*, 426 Mass. 1, 5 (1997).

We begin with the relevant statutory language. See *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 345-346 (1995), quoting from *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977) ("[S]tatutory language itself is the principal source of insight into the legislative purpose"). General Laws c. 32, § 90A, as amended through St. 2000, c. 159, § 95, provides, in pertinent part, that the claimant, as a former MDC police officer entitled to accidental disability retirement benefits, "shall have his retirement allowance increased to an amount not exceeding

one half the rate of regular compensation payable to state police officers holding similar positions . . . in the comparable grade or classification . . . occupied by such former officer at the time of his retirement." General Laws c. 32, § 1, as amended through St. 1979, c. 681, in turn, defines "regular compensation" as "the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement."

This "straightforward and unambiguous" language "denotes ordinary, recurrent, or repeated payments not inflated by any 'extraordinary ad hoc' amounts such as bonuses or overtime pay." *Pelonzi*, 451 Mass. at 479, quoting from *Bulger* v. *Contributory Retirement Appeal Bd.*, 447 Mass. 651, 658 (2006). See *Bower* v. *Contributory Retirement Appeal Bd.*, 393 Mass. 427, 429 (1984), quoting from *Boston Assn. of Sch. Administrators & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981) (" 'regular' as it modifies 'compensation,' imports the idea of ordinariness or normality as well as the idea of recurrence"). "In addition, the language 'salary, wages or other compensation in whatever form,' demonstrates 'a legislative intent to include the many distinct ways in which individuals are paid for their services.' " *Pelonzi, supra*, quoting from *Bulger, supra*. The Supreme Judicial Court has emphasized that the § 1 definition of "regular compensation" "refers to remuneration geared to work or services performed," and therefore operates as a "safeguard against the introduction into the computations [of retirement benefits] of adventitious payments to employees," which is needed especially where, as here, "the public entity that negotiates a collective agreement is not the one that will have to find the funds to pay the continuing retirement benefits." *Boston Assn. of Sch. Administrators & Supervisors*, 383 Mass. at 341.

Here, the pertinent collective bargaining agreement of the State Police Association of Massachusetts, in effect from January 1, 2007, to December 31, 2008, provides that officers who successfully pass a physical fitness test will receive a two and

one-half percent increase in their base salary. It further provides that any officer who fails the test three times "will be subject to a [temporary duty] assignment" and that "[s]uch [temporary duty] assignment shall continue until the employee successfully passes the physical fitness test." Officers who do not pass the physical fitness test are not eligible to receive the increase to their base salary.

We conclude that CRAB's ruling that the physical fitness bonus should not be regarded as "regular compensation" as defined in G. L. c. 32, § 1, was reasonable. In *O'Brien* v. *Contributory Retirement Appeal Bd.*, 76 Mass. App. Ct. 901, 902 (2010), we held that a contract-based physical fitness bonus paid to a police officer before he retired due to accidental disability was not "regular compensation" as defined in G. L. c. 32, § 1. Although it is true, as the claimant argues, that here, unlike in *O'Brien*, the bonus becomes incorporated into the base salary of its recipients, and that almost all active-duty officers eventually may pass the test, nevertheless the additional compensation is, ultimately, a bonus paid *only* upon successful passage of the test. We therefore agree with CRAB that the bonus operates as a contract-based incentive to successful passage of the physical fitness test, and thus does not form part of the "regular compensation" owed to each person who attains a particular grade or classification as compensation for his or her regular service as a police officer. See *ibid.* See also *Pelonzi*, 451 Mass. at 480 (automobile provided to "on-call" emergency responder for use in his employment was not "regular compensation" because it "was not intended to compensate the plaintiff for his service"). As CRAB reasoned, the physical fitness bonus is, indeed, the sort of "adventitious" payment under a contract negotiated by "the public entity that . . . is not the one that will have to find the funds to pay the continuing retirement benefits" against which the § 1 definition of regular compensation acts as a safeguard. See *Boston Assn. of Sch. Administrators & Supervisors*, *supra*. CRAB's interpretation of the retirement statute was thus both reasonable and consistent with governing law.

3. *Conclusion.* The judgment of the Superior Court allowing the claimant's motion for judgment on the pleadings and reinstat-

ing the decision of the Division of Administrative Law Appeals magistrate is reversed, and a new judgment is to be entered affirming CRAB's decision.

*So ordered.*