MICHAEL J. ROTONDI *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

Suffolk. September 5, 2012. - October 29, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Contributory Retirement Appeal Board. Public Employment,* Retirement.
*Retirement. Words,* "Regular compensation."

The Contributory Retirement Appeal Board (board) correctly concluded that
the $200 fixed annual compensation threshold set forth in G. L. c. 32,
§ 3 (2) (*d*), applied to an elected town moderator who otherwise was
eligible to become a member of the contributory retirement system for
public employees [647-652]; further, the board correctly concluded that
health insurance contributions and professional association dues paid on
behalf of the town moderator were not "[fixed] annual compensation" for
purposes of the statute [652-654].

CIVIL ACTIONS commenced in the Superior Court Department
on January 27 and 30, 2006.

After consolidation, the case was heard by *Garry V. Inge,* J.,
on motions for judgment on the pleadings.

The Supreme Judicial Court granted an application for direct
appellate review.

*Walter M. Foster* for the plaintiff.

*Maryanne Reynolds,* Assistant Attorney General, for Contribu-
tory Retirement Appeal Board.

*Michael Sacco* for retirement board of Stoneham.

CORDY, J. This case comes before us on the plaintiff's ap-
plication for direct appellate review of a decision of a judge in
the Superior Court affirming a decision of the Contributory
Retirement Appeal Board (CRAB). It requires us to decide
whether the $200 fixed annual compensation threshold set forth
in G. L. c. 32, § 3 (2) (*d*), applies to elected officials who are
otherwise eligible to become members of the contributory retire-

---

[1]Retirement board of Stoneham.

ment system for public employees and whether health insurance contributions and professional association dues paid on behalf of such an official are to be considered as "[fixed] annual compensation" for the purposes of this subsection. Because we conclude that the $200 threshold applies to "any person," including an elected official, otherwise eligible for membership under G. L. c. 32, and the value of health insurance contributions and association dues does not qualify as "[fixed] annual compensation," we affirm the judgment of the Superior Court.

1. Michael J. Rotondi was elected town moderator of the town of Stoneham (town) in April, 1993, and was regularly reelected to that position until April, 2011. From 1993 to 1999, he earned one hundred dollars per year as town moderator. In 1999, his salary increased to $200.[2] In addition to his salary, Rotondi received health insurance through the town.[3]

In July, 2001, Rotondi became a member of the State retirement system as a full-time employee of the Department of Environmental Protection. In December, 2001, he requested to join the town's contributory retirement system and purchase credit for his past eight years of service as an elected town

---

[2]Rotondi's salary was increased to $205, effective July 1, 2003, by the May 5, 2003, vote of the Stoneham town meeting. This increase, which Rotondi justified to town meeting members as a "clerical accounting matter," was subsequently rescinded by a July 28, 2003, vote of the town meeting, retroactive to June 30, 2003. Thus, at no relevant time was Rotondi's salary greater than $200.

Rotondi also sought to alter the way he was paid in order artificially to inflate his salary so it would appear to be greater than $200. On July 1, 2003, Rotondi approached the town's accountant and requested that his salary be paid in monthly instalments of $16.67 instead of the lump sum he would ordinarily receive at the end of each fiscal year. The accountant obliged, provided Rotondi submitted monthly time sheets. Having been paid a lump sum of $200 for the 2002-2003 fiscal year at the end of June, with the commencement of the monthly instalments in July, Rotondi received a total of $283.35 in the 2003 calendar year. (He neglected to submit a time sheet for December, 2003, and thus only received five monthly instalments in 2003.) Rotondi then claimed that even if G. L. c. 32, § 3 (2) (*d*), applied to elected officials, he exceeded the $200 limit, having been paid $283.35 in 2003. This argument lacked any merit as there was no actual change in his annual salary, which remained set at $200.

[3]The cost of Rotondi's health insurance benefits generally increased over time.

moderator.[4] On January 23, 2002, the retirement board of Stoneham (board) denied his request on the ground that he had not applied for membership within ninety days of his election as required by G. L. c. 32, § 3 (2) (*a*) (vi). Accordingly, within ninety days of his reelection as town moderator in April, 2003, Rotondi reapplied for membership. At this time, the board deferred action on Rotondi's application and asked its counsel to consider the applicability of the "two hundred dollars or less" rule set forth in G. L. c. 32, § 3 (2) (*d*), to elected officials like Rotondi. Around the same time, Rotondi sought the opinion of the public employee retirement administration commission (PERAC) regarding his eligibility to join the system as an elected official earning exactly $200 per year. In a letter to Rotondi and a memorandum to all retirement boards, PERAC asserted that it has "long opined" that G. L. c. 32, § 3 (2) (*a*) (vi), provides that "a compensated elected official is entitled to membership in the appropriate retirement system regardless of the amount of his or her compensation," and the "two hundred dollars or less" limitation in § 3 (2) (*d*) was not intended to apply to elected officials. Nevertheless, relying on the advice of its own counsel, the board voted on July 29, 2003, to deny Rotondi's application on the ground that he did not earn more than $200 per year in his position as town moderator. Rotondi appealed from the decision to CRAB pursuant to G. L. c. 32, § 16 (4). CRAB referred the matter to the division of administrative law appeals for a hearing. On October 25, 2004, an administrative magistrate affirmed the board's decision. Rotondi appealed to CRAB, which affirmed the magistrate's decision. At this time, PERAC moved to intervene; both PERAC and Rotondi filed motions for reconsideration; and CRAB reaffirmed its original decision. Pursuant to G. L. c. 30A, § 14, Rotondi sought judicial review of CRAB's decision in the Superior Court. PERAC filed a separate action seeking review of the same decision, and on the parties' joint motion the cases were consolidated.[5] CRAB then filed a motion for remand to allow

---

[4]The contributory retirement system permits the retroactive purchase of creditable service in certain situations. See generally G. L. c. 32, § 3 (3) (late entry into membership).

[5]The public employee retirement administration commission (PERAC) has not joined in this appeal.

CRAB to examine the legislative history of § 3 (2) (*d*) in more detail and reconsider its decision. A Superior Court judge allowed the motion, and after reevaluating its analysis, CRAB affirmed its original decision by a one-to-one vote.[6] The case returned to the Superior Court, where Rotondi and the board filed cross motions for judgment on the pleadings. By memorandum of decision and order, the judge denied Rotondi's motion for judgment on the pleadings, allowed the board's motion, and affirmed CRAB's decision. Judgments entered on February 15, 2011.

Throughout the litigation and in this appeal, Rotondi makes two principal arguments: that as an elected official, he is exempt from the $200 threshold set forth in G. L. c. 32, § 3 (2) (*d*); and even if subject to the threshold, his annual compensation regularly exceeded $200 based on the value of his health insurance benefits and his town-paid membership dues in the Massachusetts Moderators Association.

2. In reviewing CRAB's decision that G. L. c. 32, § 3 (2) (*d*), applies to any person, including elected officials, who apply for membership in a public retirement system, we are required to give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7).[7] See *Bulger* v. *Contributory Retirement Appeal Bd.*, 447 Mass. 651, 658-659 (2006); *Brackett* v. *Civil Serv. Comm'n*, 447 Mass. 233, 241-242 (2006); *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618-619 (1997). We set aside a CRAB decision only if it is legally erroneous or not supported by substantial evidence. See *Murphy* v. *Contributory Retirement Appeal Bd.*, *ante* 333, 344

---

[6]The third seat on the Contributory Retirement Appeal Board (CRAB) was vacant at the time CRAB affirmed its decision.

[7]As they have in past litigation, see *Pelonzi* v. *Retirement Bd. of Beverly*, 451 Mass. 475, 478 n.8 (2008), both PERAC and CRAB have contended throughout the present litigation that as government agencies with expertise in the area of retirement law, their interpretations are entitled to deference. Because PERAC has not joined in this appeal, and the issue is one of statutory interpretation, we need not consider which body, if either, is entitled to greater deference. See *id.*, and cases cited ("While we give weight to the experience of both PERAC and CRAB, here they offer conflicting interpretations. Ultimately, the issue is one of statutory interpretation, which presents a question of law for the court").

(2012); *Retirement Bd. of Salem* v. *Contributory Retirement Appeal Bd.*, 453 Mass. 286, 289 (2009), and cases cited. Where the issue is ultimately one of statutory interpretation, however, we exercise de novo review as we do for all questions of law. See *Pelonzi* v. *Retirement Bd. of Beverly*, 451 Mass. 475, 478 n.8 (2008); *Bulger* v. *Contributory Retirement Appeal Bd.*, *supra* at 657; *Plymouth* v. *Civil Serv. Comm'n*, 426 Mass. 1, 5 (1997).

We begin with the language of the statute, "the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and courts must interpret the statute so as to render the legislation effective, consonant with reason and common sense." *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 358 (2006) (Spina, J., concurring).

General Laws c. 32, § 3 (2), which governs eligibility for membership in the contributory retirement system for public employees, provides, in relevant part:

> "(*a*) Membership in a system as a member in service . . . shall comprise the following persons:
>
> ". . .
>
> "(vi) Any person hereafter elected by popular vote to a state, county or municipal office or position who files with the board on a prescribed form a written application for membership within ninety days after the date of assuming office; provided, that a member becoming an elected official shall retain his membership and an elected official who is a member shall remain a member upon his re-election or upon his election or appointment to any other position which would otherwise entitle him to membership.
>
> ". . .
>
> "(*d*) In all cases involving part-time, provisional, temporary, temporary provisional, seasonal or intermittent employ-

ment or service of any employee in any governmental unit, including such employment or service of any state official, the board shall have and exercise full jurisdiction to determine such employee's eligibility for membership; *provided, that any person holding a position for which the annual compensation is fixed in an amount of two hundred dollars or less shall not be eligible for membership except by vote of the board . . .*" (emphasis added).

The main question is whether G. L. c. 32, § 3 (2) (*d*), applies to elected officials. This debate necessarily turns on the meaning of the words "any person" in § 3 (2) (*d*), and whether that condition is intended to apply only to the types of individuals listed in the antecedent clause — i.e., part-time, provisional, temporary provisional, or temporary employees — or whether it applies to literally "any person" in the retirement system under any of the membership categories set out in G. L. c. 32, § 3 (2).[8] Rotondi claims that § 3 (2) (*d*) cannot and does not limit the membership rights of elected officials, because § 3 (2) (*a*) (vi) automatically confers membership on elected officials. This is incorrect. General Laws c. 32, § 3 (2) (*a*), establishes several categories of membership in a public retirement system. Elected officials are but one category of membership. Section 3 (2) (*a*) merely establishes, as a threshold matter, categories of individuals who are generally eligible to participate in the public retirement system. It does not exempt elected officials, or any other category of membership, from limitations imposed by other provisions of G. L. c. 32, including the condition in § 3 (2) (*d*) affecting "any person" whose "annual compensation is fixed in an amount of two hundred dollars or less."[9]

---

[8] Because we conclude that "any person" refers literally to any person under the ambit of G. L. c. 32, and thus applies to elected officials, it is unnecessary to decide whether Rotondi may be considered a "part-time" or "intermittent" employee under G. L. c. 32, § 3 (2) (*d*).

[9] We acknowledge that Joyce *vs.* Braintree Retirement Bd., CRAB Docket No. CR-03-401 (Nov. 16, 2004), where CRAB concluded that for elected individuals covered by § 3 (2) (*a*) (vi), "there is no limitation based on compensation as found in 3 (2) (*d*)," is inconsistent with CRAB's present position and our decision today. We accept CRAB's representation that the Joyce decision was "made without substantial analysis and was incorrect." See Rotondi *vs.* Stoneham Retirement Bd., CRAB Docket No. CR-03-551 (Dec. 30, 2005).

Prior to 1947, G. L. c. 32, § 3 (2) (*d*), as appearing in St. 1945, c. 658, § 1, read in pertinent part:

> "In all cases involving part-time, provisional, temporary, temporary provisional, seasonal, or intermittent employment or service of any employee in any governmental unit, including such employment or service of any state official *or of any person elected by popular vote to a county or municipal office or position*, the board shall have and exercise full jurisdiction to determine such employee's eligibility for membership" (emphasis added).

In 1947, the Legislature deleted the italicized text, see G. L. c. 32, § 3 (2) (*d*), as appearing in St. 1947, c. 660, § 2, and inserted, after the word "membership," the clause that is the subject of this appeal: "provided, that any person holding a position for which the annual compensation is fixed in an amount of two hundred dollars or less shall not be eligible for membership except by vote of the board." G. L. c. 32, § 3 (2) (*d*), as amended by St. 1947, c. 667, § 2. Rotondi argues that the deletion of the words "any person elected by popular vote" evidences an intent to exempt elected officials from the requirements imposed by § 3 (2) (*d*). But that deletion can only be properly interpreted in light of the contemporaneous addition of the $200 threshold applicable to "any person." Despite the lack of legislative history on the subject, both parties acknowledge that the deletion of the language pertaining to elected officials was likely designed to limit the discretion of local retirement boards, which, prior to the amendment, could have denied membership to *any* elected official regardless of compensation or nature of service. Following the amendment, retirement boards could no longer refuse to admit elected officials to the system for political or other capricious reasons. However, because retirement boards will always have a legitimate interest in denying membership to individuals whose service is limited in nature — as evidenced by a salary of $200 or less — there is no similar justification for limiting the discretion of retirement boards to deny membership to elected officials like the plaintiff. Had the Legislature intended the "any person" language to refer only to the immediate antecedent — i.e., "part-time, provisional,

temporary, temporary provisional, seasonal or intermittent" employees — it likely would have used the language "any *such* employee" or at least "any *such* person" (emphasis added), or, in § 3 (2) (*a*) (vi), would have made clear that the eligibility of elected officials is not conditioned on any other provisions using the common "notwithstanding any other provisions of this chapter" or similar language.

We briefly turn our attention elsewhere in G. L. c. 32 and note that the legislative history of G. L. c. 32, § 4 (1) (*o*), strongly suggests that certain elected officials, town moderators specifically among them, are not granted automatic membership by virtue of § 3 (2) (*a*) (vi). Prior to 2009, G. L. c. 32, § 4 (1) (*o*), as amended through St. 2008, c. 302, § 7, provided:

> "Any member who served as a selectman, alderman, city councilor, school committee member or *town moderator as the result of election by direct vote of the people, in which position he received no compensation*, may establish credit for such service by depositing in the annuity savings fund of the system of which he is a member a sum equal to the amount which would have been paid into such during such period if such position had been compensated at the rate of twenty-five hundred dollars per year, plus buyback interest to the date of payment; provided, however, that the provisions of this paragraph shall not apply to any member first elected on or after January 1, 1986" (emphasis added).[10]

If, as the plaintiff argues, § 3 (2) (*a*) (vi) provides a special category of membership for elected officials that is immune from limitations imposed by other sections of c. 32, then § 4 (1) (*o*) would be completely superfluous. It would purportedly provide for membership for unpaid town moderators, who, by virtue of their status as elected officials, are automatically

---

[10]General Laws c. 32, § 4 (1) (*o*), as appearing in St. 2009, c. 21, § 5, now reads: "The service of a state, county or municipal employee employed or elected in a position receiving compensation of less than $5,000 annually, which service occurs on or after July 1, 2009, shall not constitute creditable service for purposes of [c. 32]." We therefore note that were a similar dispute to arise from employment occurring on or after July 1, 2009, § 4 (1) (*o*) would definitively exclude from membership employees, elected or otherwise, who earn less than $5,000 in regular compensation.

granted membership. Although Rotondi was first elected in 1993 and, thus, § 4 (1) (*o*) does not apply to him, its amendment demonstrates a clear legislative intent that § 3 (2) (*a*) (vi) does not confer unconditional membership rights to elected officials.

3. We also conclude that at no time did Rotondi receive "[fixed] annual compensation" in an amount greater than $200. In the past this court has dealt with what constitutes "[r]egular compensation," as that term is defined by G. L. c. 32, § 1, and the relevant PERAC regulation, 840 Code Mass. Regs. § 15.03(1)-(2) (2010), for the purposes of calculating retirement allowances. See *Pelonzi* v. *Retirement Bd. of Beverly*, 451 Mass. 475, 481-482 (2008); *Bulger* v. *Contributory Retirement Appeal Bd.*, 447 Mass. 651, 658-659 (2006). Although the present case requires us to define the limits of the term "[fixed] annual compensation" as it is used in G. L. c. 32, § 3 (2) (*d*), we conclude that there is no substantive difference between the term "[fixed] annual compensation" and the term "[r]egular compensation" as it is defined by § 1 and 840 Code Mass. Regs. § 15.03(1)-(2). We find no reason to distinguish between forms of compensation that qualify for the purposes of calculating an individual's retirement allowance, and forms of compensation that qualify in satisfying a minimum eligibility requirement like the one set forth in § 3 (2) (*d*). An interpretation that draws this parallel is consistent with the well-established statutory intent of c. 32 to "exempt irregular payments of compensation from the retirement base." *Hallett* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 66, 70 (2000). See *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981) (definition of "[r]egular compensation" intended to "safeguard against . . . adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems").

General Laws c. 32, § 1, provides, in relevant part:

> " 'Regular compensation' . . . shall mean the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime,

severance pay for any and all unused sick leave, early retirement incentives, or any other payments made a result of giving notice of retirement . . . ."

Although the "in whatever form" language may seem expansive at first glance, the accompanying PERAC regulation and the decisions of this court in no way support an interpretation that would include health insurance premiums and association dues within the definition of "regular compensation."[11] See 840 Code Mass. Regs. § 15.03(1)-(2). In order to qualify as "regular compensation," payments must be " 'recurrent,' 'regular,' and 'ordinary' remuneration." *Bulger* v. *Contributory Retirement Appeal Bd.*, *supra* at 658 (cash housing allowance constituted "regular compensation," where it was understood by both parties that payment would not actually pay for housing but was intended to supplement plaintiff's salary in attempt to convince him to extend his contract as university president). See *Bower* v. *Contributory Retirement Appeal Bd.*, 393 Mass. 427, 429 (1984). In contrast, in *Pelonzi* v. *Retirement Bd. of Beverly*, *supra*, we held that the personal use value of a city-supplied automobile was not to be included as "regular compensation" in calculating a city commissioner's retirement allowance, because, inter alia, it is not a "payment" made to the employee. We noted in the *Pelonzi* case that barring a single exception for "evaluated maintenance [in the form of full or partial boarding and housing] as provided for in [G. L. c. 32, § 22 (1) (c)]," the Legislature did not include "any similar explicit directions for the treatment of [a] noncash benefit" in G. L. c. 32, § 1. *Pelonzi* v. *Retirement Bd. of Beverly*, *supra* at 481. See 840 Code Mass. Regs. § 15.03(1)-(2). See generally *Hallett* v. *Contributory Retirement Appeal Bd.*, *supra*; *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, *supra* (discussing intent of statutory scheme to control retirement costs and promote

---

[11]We note that for active service subsequent to July 1, 2009, 840 Code Mass. Regs. § 15.03(3)(f) (2010) specifically excludes from the definition of "regular compensation" a multitude of benefits, including any "indirect, in-kind or other payments for such items as housing, lodging, travel, clothing allowances, annuities, welfare benefits, lump sum buyouts for workers' compensation, job-related expense payments, automobile usage, *insurance premiums*, [or] dependent care assistance . . . ."

predictability by placing reasonable limits on qualifying compensation).

Even PERAC, which otherwise supported the plaintiff's position throughout the litigation below, refuted his contention that the value of health insurance benefits and the cost of association dues count toward his annual compensation for the purposes of satisfying the $200 threshold under § 3 (2) (*d*). A holding that would include health insurance benefits and other fringe benefits under the definition of "[fixed] annual compensation" would be plainly at odds with the definition and illustration of "[r]egular compensation" under G. L. c. 32, § 1, and the relevant PERAC regulation. The practical consequences of such a decision would be staggering. Apart from the obvious fact that health insurance premiums are not paid to the employee, as is virtually every recognized form of "regular compensation," see *Pelonzi* v. *Retirement Bd. of Beverly*, *supra*; 840 Code Mass. Regs. § 15.03(1)-(2), health care costs fluctuate annually and have increased greatly over time. They are not "fixed" compensation and cannot serve as a practical basis for calculating an employee's retirement allowance or initial eligibility.

*Judgment affirmed.*