WILLIAM J. LEARY vs. CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

Suffolk. October 2, 1995. - November 14, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Statute,* Construction. *Retirement. Public Employment,* Retirement.
*School and School Committee,* Retirement benefits. *Words,* "Regular
compensation."

Salary earned out of State is not "regular compensation" within the mean-
ing of G. L. c. 32, § 5 (2) (*a*), with the result that an employee's three-
year highest average annual rate of compensation should be based only
on the employee's salary figures while employed by a political subdivi-
sion of the Commonwealth and not on the salary figures reflected in the
employee's purchase of creditable service for out-of-State work pursu-
ant to G. L. c. 32, § 3 (4). [345-349]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 11, 1993.

The case was heard by *Margot Botsford,* J., on motions
for judgment on the pleadings, and a judgment on findings
by the court was entered by *Patrick J. King,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Michael J. Long* for the plaintiff.

*Peter Sacks,* Assistant Attorney General, for the defend-
ants.

ABRAMS, J. At issue is whether salary earned out of State
is "regular compensation" within the meaning of G. L. c. 32,
§ 5 (2) (*a*) (1994 ed.). An administrative magistrate ruled
in favor of the plaintiff, William J. Leary, but the Contribu-
tory Retirement Appeal Board (CRAB), relying on the defi-

_____

[1]Massachusetts Teachers' Retirement Board.

nitions of "employee" and "regular compensation" in G. L. c. 32, § 1 (1994 ed.), affirmed the Teachers' Retirement Board's (TRB) refusal to consider the out-of-State salary figures. A Superior Court judge affirmed CRAB's decision. We transferred the case here on our own motion. We affirm the judgment of the Superior Court.

1. *Facts.* William J. Leary served first as a teacher and then as a superintendent in the Boston public schools from 1954 through 1975. From 1978 through 1988, Leary worked as a superintendent in New York and Florida. He returned to Massachusetts in 1989 and began employment as superintendent of the Gloucester public schools. On his return to Massachusetts, Leary requested information regarding the purchase of credit for his out of State service in New York and Florida. TRB notified Leary that pursuant to G. L. c. 32, § 3 (4) (1994 ed.), he could purchase up to ten years of creditable service for services performed out of State. Leary then inquired whether his Florida salary figures, which were considerably higher than his in-State salary figures, could be used in calculating the amount of his retirement allowance.[2] TRB informed Leary that the Florida figures could not be used. Leary appealed this decision to CRAB.[3] CRAB affirmed TRB's decision as did the Superior Court judge.

2. *The statute.* "[S]tatutory language itself is the principal source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). "[W]e need not look beyond the words of the statute where the language is plain and unambiguous." *State Bd. of Retirement* v. *Boston*

---

[2]Leary's highest three-year average annual salary from out-of-State service was $105,239 while his highest three-year average annual salary in Massachusetts was $76,440.

[3]On March 17, 1992, Leary paid $57,479.42 to the TRB for the purchase of ten years of out-of-State service. This figure was based on six years of salary in New York (which was considerably lower than Leary's Massachusetts salary) and four years of salary in Florida (which was considerably higher than Leary's Massachusetts salary).

Leary does not dispute the amount he was assessed. Indeed, in his brief, Leary acknowledges that the amount due "occurred pursuant to the clear and unambiguous provisions of [G. L. c.] 32, [§§] 1 and 3 (4)."

*Retirement Bd.*, 391 Mass. 92, 94 (1984). General Laws
c. 32, § 5 (2) (*a*),[4] sets out three separate and independent
factors to be considered in determining annual benefits:
three-year highest average annual rate of regular compensa-
tion, age, and number of years and full months of creditable
service. Leary contends that his purchase of creditable ser-
vice for his work in Florida affects his high average rate of
regular compensation and his number of years and full
months of creditable service. We conclude, however, that
when Leary purchased credit for out-of-State service, he was
affecting only the number of years and full months of credit-
able service.[5]

"Regular compensation" is defined in G. L. c. 32, § 1, as
"the full salary, wages or other compensation in whatever
form, lawfully determined for the individual service of the
*employee* by the employing authority . . ." (emphasis
added). The meaning of "regular compensation," therefore,
depends on the meaning of the term "employee." "Em-
ployee" is defined "as applied to persons whose regular com-
pensation . . . is paid by any political subdivision of the com-
monwealth . . . [as] any person who is regularly employed in
the service of any such political subdivision." Because Leary
was neither regularly employed in the service of a political
subdivision of the Commonwealth nor paid by any political

---

[4]General Laws c. 32, § 5 (2) (*a*) (1994 ed.), provides: "The normal
yearly amount of the retirement allowance for any member . . . shall . . .
be based on the average annual rate of regular compensation received by
such member during any period of three consecutive years of creditable
service for which such rate of compensation was the highest . . . and shall
be computed according to the [table in the statute] based on the age of
such member and his number of years and full months of creditable ser-
vice at the time of his retirement."

[5]The purchase of creditable service increased Leary's annual retirement
benefit by increasing the number of years of creditable service. According
to calculations made by the TRB and accepted by the Superior Court
judge, if Leary retired at age sixty, he would receive $45,252.48 annually
as a result of his purchase of out-of-State creditable service. Had he not
purchased credit for the out-of-State service, he would receive an annual
retirement allowance of only $29,964.48. On appeal, Leary does not dis-
pute these figures.

subdivision of the Commonwealth while employed in Florida, the compensation paid to him by Florida is not "regular compensation" within the statutory definition.

The words "regular compensation" are modified in G. L. c. 32, § 5 (2) (a), by the clause "received by such member during any period of three consecutive years of creditable service." That does not imply, as argued by Leary, that all compensation received for creditable service must be treated as regular compensation. This clause ensures that *only* years of creditable service are considered in determining the highest three-year average annual rate of regular compensation.[6] It does not alter the definition of regular compensation.

Our construction of § 5 (2) (a) is consistent with a reading of the entire statute. See *Williams* v. *Contributory Retirement Appeal Bd.*, 304 Mass. 601, 605 (1939) (statute ought to be construed, whenever possible, as a whole). See also *Negron* v. *Gordon*, 373 Mass. 199, 201 (1977), quoting *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823) ("When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute: otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated"). Our reading is further supported by G. L. c. 32, § 3 (4) (1994 ed.), which provides for the purchase of credit for out-of-State service.[7]

---

[6]Under the retirement scheme of G. L. c. 32 (1994 ed.) it is possible to earn regular compensation while not earning creditable service. For example, where an employee is employed by the Commonwealth or a political subdivision thereof but not a member of the retirement system, the employee is not able to count those years of service nor include the compensation then earned in determining her retirement benefits. See G. L. c. 32, § 1 (definition of creditable service).

[7]General Laws c. 32, § 3 (4) (1994 ed.), provides in pertinent part: "Any member in service . . . may, before the date any retirement allowance becomes effective for him, pay into the annuity savings fund of the system in one sum, or in instalments, upon such terms and conditions as the board may prescribe, an amount equal to that which would have been withheld as regular deductions from his regular compensation for such previous period . . . had such service been rendered in a public school of the commonwealth and had he been a member of the teachers' retirement

Leary's assertion that § 3 (4) alters § 5 (2) (*a*) does not give effect to the absence of any provision for out-of-State compensation in the definition of regular compensation. Although very detailed, G. L. c. 32, § 3 (4), does not provide that out-of-State compensation should be included in the calculation of retirement benefits. In these circumstances, where the statute is detailed and precise, we regard the omission as purposeful. "As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 321 (1993), quoting *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 283 (1991). Accord *Bagley* v. *Illyrian Gardens, Inc.*, 401 Mass. 822, 825 (1988).

Leary argues that our reading of the statute frustrates his reasonable expectations.[8] However, TRB has never acquiesced to Leary's view that out-of-State compensation was includable, and TRB informed Leary before he voluntarily purchased the out-of-State service, that it would not consider

---

system during the period the service was rendered . . . . Payment shall not be made and no credit shall be allowed for service in other states in excess of the total Massachusetts service to which the member would be entitled to receive credit if he remained in service to age sixty-five, with a maximum credit for service in other states not to exceed ten years . . . . In addition to the payment of such sum or instalments thereof, such member shall also pay into the annuity savings fund an amount of interest such that at the completion of such payments the value of his accumulated payments, together with regular interest thereon, actually made on account of such previous out-of-state service, shall equal the value of his accumulated regular deductions which would have resulted if regular deductions had been made when regular compensation for such service was actually received. Upon the completion of such payments, such member shall receive the same credit for such period of his previous out-of-state service . . . as would have been allowed if such service had been rendered by him in a public school of the commonwealth."

[8] We reject Leary's argument that there is unfairness in including his Florida compensation in calculating the price of purchasing the out-of-State creditable service but not in calculating his retirement benefits. The ability to purchase credit for out-of-State service affords teachers and superintendents a substantial benefit that is not afforded to other public employees. Further, purchase of out-of-State creditable service is voluntary.

his out-of-State salary in determining his benefits. Therefore, Leary's expectation that his retirement benefits would be based on his Florida salary was not reasonable. See *Boston Ass'n of Sch. Adm'rs & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 343 (1981). Cf. *DiGianni* v. *Contributory Retirement Appeal Bd.*, *post* 350 (1995).

We conclude that Leary was not an employee of a political subdivision of the Commonwealth while employed by Florida and that, therefore, his Florida salary was not "regular compensation" within the meaning of G. L. c. 32, § 5 (2) (*a*). The Superior Court judge correctly determined that Leary's three-year highest average annual rate of compensation should be based only on Leary's salary figures while employed by a political subdivision of the Commonwealth.

*Judgment affirmed.*