THOMAS HAYES, JR. vs. RETIREMENT BOARD OF NEWTON.

Suffolk. April 7, 1997. - July 17, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

Administrative Law, Agency's interpretation of statute. Public Employment,
Retirement, Worker's compensation. Pension. Statute, Construction. Words,
"Regular compensation received."

The term "regular compensation received," appearing in G. L. c. 32, § 10 (2)
(a), is not the "regular compensation" defined in G. L. c. 32, § 1, and thus
a municipal employee who received workers' compensation benefits for the
five years preceding his termination from employment was not entitled to
have the pension portion of his retirement allowance calculated according
to the compensation he would have received had he not been injured.
[470-472]

General Laws c. 32, § 14 (1) (a), addressing the creditable service of a
municipal employee for retirement purposes and employer contributions to
an employee's annuity fund when the employee is receiving workers'
compensation benefits, does not operate to modify the language of G. L.
c. 32, § 10 (2) (a), to require the calculation of the retired employees' pen-
sion benefits based on the average annual rate of compensation he would
have received during a period when the employee was receiving workers'
compensation benefits rather than the "regular compensation received"
basis stated in § 10. [472-476]

CIVIL ACTION commenced in the Superior Court Department on
August 26, 1994.

The complaint was ordered dismissed by Thayer Fremont-
Smith, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

Daniel W. Rice for the plaintiff.

Frances E. Balin, Assistant City Solicitor, for the defendants.

FRIED, J. The plaintiff, Thomas Hayes, Jr., appeals from an
order of the Superior Court which dismissed his complaint
seeking the calculation of his retirement benefits pursuant to
G. L. c. 32, § 10 (2) (a). Hayes seeks to have the pension por-
tion of his retirement allowance calculated according to the

compensation he would have received had he not been injured and been receiving workers' compensation for the five years preceding his termination, and contends that G. L. c. 32, § 14 (1) (a), supports his position. We transferred the case to this court on our own motion. We affirm the decision of the Superior Court.

I

Hayes began working for the city of Newton in 1968, filling a number of positions requiring physical labor. During this time, Hayes was a member of the city's contributory retirement system and his rate of pay was set by the city. In February, 1987, Hayes injured his back while on the job. Approximately six weeks later, he again injured his back while at work. As a result of this second injury, Hayes was unable to work and began receiving workers' compensation benefits pursuant to G. L. c. 152, during which time the city continued to carry Hayes on its payroll and Hayes accrued sick leave and other benefits. On August 4, 1992, Hayes was notified that his employment with the city had been terminated as a result of his physical inability to perform his former duties. Hayes elected to receive his superannuation retirement allowance according to G. L. c. 32, § 12, option (c).

A public employee's retirement allowance is comprised of two parts: an annuity funded by the employee through accumulated deductions from the employee's salary, and a pension funded by the employer. The latter makes up the larger portion of the retirement allowance prescribed by law. By virtue of G. L. c. 32, § 10 (2) (a), the pension portion is determined by means of a formula which is based on the employee's "average annual rate of regular compensation received during any period of five consecutive years of creditable service for which such rate of compensation was the highest."[1] The retirement board of Newton (board) calculated Hayes' pension utilizing the figures for Hayes' regular compensation which he had received from 1982 through 1987. These calculations were subsequently approved by the public employee retirement administration (PERA). Hayes challenged the board's decision in September,

---

[1]General Laws c. 32, § 10 (2) (a), has been amended to compute an average of three years, rather than five. St. 1984, c. 473, § 1. Statute 1984, c. 473, § 2, however, provided for acceptance by the cities and towns of the Commonwealth, and the city has never accepted this amendment.

1992, arguing that this calculation should have been made according to the salary that had been set by the city and was in effect for his position on the date of his termination in 1992 and the five years preceding it — the salary which Hayes would have received had he not been injured.

A hearing was held before an administrative magistrate on December 9, 1993, who accepted Hayes' argument that G. L. c. 32, § 14 (1) (*a*), allowed Hayes "to be regarded, for purposes of retirement, as though his employment in the service of the commonwealth had not been interrupted by his industrial accident." The city appealed from this decision to the Contributory Retirement Appeal Board (CRAB) which rejected the administrative magistrate's reasoning and affirmed the decision of the board. On appeal by Hayes, the Superior Court upheld CRAB's decision.

II

A

As a reviewing court, we "accord due weight and deference to an agency's reasonable interpretation of a statute within its charge." *Boston Neighborhood Taxi Ass'n* v. *Department of Pub. Utils.*, 410 Mass. 686, 692 (1991); *Colo* v. *Contributory Retirement Appeal Bd.*, 37 Mass. App. Ct. 185, 188 (1994). In this case, both agencies concerned with this issue, PERA and CRAB, reached the conclusion that Hayes' retirement allowance should be calculated on the basis of the compensation he received prior to his ceasing active work.

The crux of this dispute centers around the meaning of the phrase "regular compensation received" which appears in G. L. c. 32, § 10 (2) (*a*). The relevant portion of this statute provides:

> "Any member who retires under the provisions of this section, who has completed twenty or more years of creditable service . . . shall receive a normal yearly amount of retirement allowance which shall not be less than the sum of his annuity, which shall be the actuarial equivalent of his accumulated regular deductions at his attained age on the date the allowance becomes effective, and a *pension equal to a sum of not less than one-third of his average annual rate of regular compensation received* during any period of [five] consecutive years of creditable service for

which such rate of compensation was the highest . . ."
(emphasis supplied).

Hayes focuses on the definition of "regular compensation"
while the board stresses the word "received."

Arguing that he is entitled to a pension based on the pay
scale set for his position during the time he was receiving work-
ers' compensation, Hayes directs us to the definitions provided
in G. L. c. 32, § 1, which provide that " '[r]egular compensa-
tion' . . . shall mean the full salary, wages or other compensa-
tion in whatever form, lawfully determined for the individual
service of the employee by the employing authority . . ."
Because this definition equates regular compensation with the
wages determined for the position, and includes no requirement
that the employee actually receive such pay, Hayes insists that
the fact that the city's approved salary schedule determined a
rate of pay for his position between 1987 and 1992 entitles him
to a retirement pension based on an average of the salaries set
for those five years, just as if he had performed his work-related
duties over the course of that period. The board does not contest
Hayes' use of this statutory definition for regular compensation,
but argues that Hayes ignores the explicit language of G. L.
c. 32, § 10 (2) (*a*), which speaks of "regular compensation
*received*" (emphasis supplied).

As the board points out, "[t]he usual and ordinary meaning
of the word 'received' does not include the term 'would have
received but for his injury,' " see *Naples* v. *Commissioner of
the Dep't of Employment & Training*, 412 Mass. 631, 634
(1992) ("usual and ordinary meaning of the word 'paid' does
not encompass wages earned but not paid"), nor does it mean
"set," "determined," or "assigned" by the city. We have repeat-
edly held that, "[w]here the statutory language is clear, it must
be given its plain and ordinary meaning." *Brook House
Condominium Trust* v. *Automatic Sprinkler Appeals Bd.*, 414
Mass. 303, 306 (1993), quoting *Nationwide Mut. Ins. Co.* v.
*Commissioner of Ins.*, 397 Mass. 416, 420 (1986). To ignore the
language of § 10 (2) (*a*), or equate the word "received" with
any of the readings Hayes proposes, would change the plain
meaning of the statute and would "effectively, and, of course,
inappropriately, amend[] the statute." *Acme Laundry Co.* v.
*Secretary of Envtl. Affairs*, 410 Mass. 760, 780 (1991); *Saccone*
v. *State Ethics Comm'n*, 395 Mass. 326, 332 (1985). CRAB

found that Hayes "last received regular compensation as that term is defined by G. L. c. 32, § 1 in 1987." From 1987 to 1992, Hayes did not receive regular compensation, but instead received workers' compensation benefits under G. L. c. 152, which are not considered to be "regular compensation." *Zelesky* v. *Commissioner of the Div. of Pub. Employee Retirement Admin.*, 30 Mass. App. Ct. 106 (1991).[2]

## B

Hayes cannot prevail under the plain language of G. L. c. 32, § 10 (2) (*a*). We turn then to his argument that G. L. c. 32, § 14 (1) (*a*), essentially trumps or modifies the language of § 10 (2) (*a*), thereby entitling him to a pension calculated on a basis of what his salary would have been had he not been injured. The relevant portions of G. L. c. 32, § 14 (1) (*a*), state:

[2]Hayes points to a letter issued by PERA which suggests that PERA adopted Hayes' interpretation of "regular compensation received" in the case of another injured worker. In its letter, PERA noted that that worker had received sick pay, longevity pay, and other benefits subsequent to his injury and opined that "[t]hese payments fall within the definition of regular compensation." PERA went on to state that "[f]or purposes of determining [the worker's] 'average annual rate of regular compensation', his salary . . . in effect on the date that he last received such compensation may be annualized and used in computing the amount of his pension," in order to calculate his accidental disability retirement allowance. In writing this letter, PERA never addressed the provisions of § 10 (2) (*a*). Instead, the letter was written in response to the worker's application for an accidental disability retirement allowance under the provisions of G. L. c. 32, § 7 (2), a section which protects public employees by providing a retirement allowance for any member "who becomes totally and permanently incapacitated for further duty . . . by reason of a personal injury sustained or a hazard undergone" during the course of his labors. We note that Hayes was free to pursue a retirement allowance under this section of the statute but chose to proceed under § 10 instead. As to the reasoning contained in PERA's letter to the other worker, we have previously read the definition of "regular compensation" as contained in G. L. c. 32, § 1, to refer to "remuneration geared to work or services performed," *Boston Ass'n of School Admins. & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 341 (1981); *Zelesky* v. *Commissioner of the Div. of Pub. Employee Retirement Admin.*, 30 Mass. App. Ct. 106, 108-109 (1991), and we do not find the letter sufficient to persuade us that Hayes received regular compensation during the time he was receiving workers' compensation merely because the city continued to carry him on its payroll and Hayes continued to accumulate sick leave benefits over the course of those years. We make no attempt to reconcile PERA's and our reading of "regular compensation received" in this case with PERA's seemingly divergent reading in the proffered letter and express no opinion as to whether this phrase entails a different reading in the context of § 7 (2).

"Any employee who was a member in service at the time of sustaining an injury . . . on account of which he becomes entitled to [workers' compensation] shall . . . retain all the rights of a member in service while he is living, unless and until a retirement allowance becomes effective for him . . . . During such periods . . . no deductions for the annuity savings fund of the system shall be made from [the workers' compensation] payments such members shall receive . . . .

"Any such member shall have credited to him as creditable service under the system the period during which he is receiving such weekly payments. . . . At the time of his retirement there shall be transferred from the pension fund of the system of which he was a member at the time of the accident, to the annuity savings fund of the system of which he is then a member, the amount which said person would have paid into said fund had his employment in the service of the commonwealth or political subdivision thereof not been interrupted by his industrial accident . . . provided, that any sum so paid by the commonwealth or any political subdivision thereof shall be used only to provide an increased retirement allowance of the person on whose account such payment is made."

Referring solely to this section of G. L. c. 32, the administrative magistrate who ruled in Hayes' favor determined that "the spirit of this section is that the retiree should not lose rights or incur additional hardship after sustaining an injury for which he collects Workers' Compensation benefits," and thus Hayes' retirement pension should be calculated according to "the average annual rate of compensation he would have received" between 1987 and 1992 had he not been injured.

Section 14 protects employees who are injured on the job by allowing them to continue accumulating creditable service while receiving workers' compensation[3] and by instructing the employer to make the contributions to the employee's annuity

---

[3]This accumulation of creditable service benefits the employee by increasing one of the factors used to determine the employee's retirement allowance. Pursuant to G. L. c. 32, § 5 (2), an employee's normal retirement allowance is calculated through the use of a formula which considers the employee's years of creditable service, the employee's age at retirement, his employment grouping, and his average annual rate of regular compensation. Application of this

fund which would have been deducted from the employee's salary had he not been injured.[4] There is no corresponding language in § 14, however, which addresses the pension portion of an employee's retirement benefits, and that is the issue before us here to which § 10 speaks, using the term "regular compensation received."

Hayes seeks to employ § 14 (1) (*a*) by stressing its first sentence which provides that an employee receiving workers' compensation "shall . . . retain all the rights of a member in service." Referring back to the definitions contained in § 1, Hayes contends that an injured employee should be treated the same as an employee who is receiving regular compensation by pointing out that "[s]ervice" is defined to be "service as an employee in a governmental unit for which regular compensation is paid." The board explains that the phrase "[m]ember in [s]ervice" is defined in § 3 (1) (i), and denotes an individual's employment status. It does not address the different question of an employee's receipt or nonreceipt of regular compensation. We agree with the board that the most straightforward reading of this sentence in § 14 addresses an employee's status and certain rights which relate to this status, such as the right to vote and to apply for a retirement allowance. It makes no reference to the measure of compensation which should be used in calculating an injured employee's retirement allowance.

Hayes goes on to suggest that because the annuity contributions the employer is required to make on behalf of the injured employee are based on what the worker "would have paid" had he not been injured, the "spirit" of § 14 contains a preservative

provision allowed Hayes to retire with credit for twenty-three years and three months of service with the city.

[4]In his brief, Hayes claims that the city failed to credit his annuity savings fund with the accumulated deductions the employer is instructed to make for an injured employee under § 14 (1) (*a*), thereby "illegally diminish[ing] Hayes' retirement allowance." As the defendants observe, however, Hayes fails to cite anything in the administrative record or record appendix which can support this allegation, which Newton denies, nor did he properly raise this issue in any of the proceedings prior to this appeal, see *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 73 (1982); Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979), and we do not consider this claim. While Hayes is certainly entitled to the annuity contributions required pursuant to § 14 (1) (*a*), we observe, arguendo, that any errors made in regard to the city's contributions to Hayes' annuity fund would have no bearing on the proper calculation of Hayes' average regular compensation as it affects the determination of his pension.

intent, recognized by the administrative magistrate, that carries over to a determination of the employee's regular compensation received. According to Hayes, because § 14 "specifically deals with what status an injured employee has while receiving workers' compensation, its provisions must control and be interpreted to supersede any ambiguous or conflicting provisions elsewhere in the law."

A retirement allowance is comprised of two distinct components. The employer's obligation to make contributions to an employee's annuity fund carries no implication about the employee's pension, which is addressed in § 10 (2) (*a*) and is measured in terms of "regular compensation received." While § 14 (1) (*a*) provides significant protections to preserve the status and retirement benefits of public employees, like Hayes, whose ability to work has been interrupted by an industrial accident, it does not speak to the issue of how to assess the amount of "regular compensation received" in calculating the pension portion of an employee's retirement allowance, and thus we find no conflict between this provision and § 10 (2) (*a*).[5] On the contrary, that § 14 specifically addresses both creditable service and an employee's annuity payments works against Hayes by showing that the Legislature could have provided similar instruction regarding the determination of "regular compensation received," but did not.[6] See *Leary* v. *Contributory Retire-*

---

[5]The administrative magistrate who accepted Hayes' arguments relied solely on the language of G. L. c. 32, § 14 (1) (*a*), and never made reference to G. L. c. 32, § 10 (2) (*a*).

[6]In *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 347 (1995), we noted the distinction between "creditable service" and "regular compensation received" as those terms were used in G. L. c. 32, § 5 (2) (*a*). A teacher who was allowed to "buy back" years during which he taught outside the Commonwealth so that they could count as creditable service was not permitted to use the salaries he received during those years to compute his "average annual rate of regular compensation received." Reviewing the statute, we noted that "[t]he words 'regular compensation' are modified . . . by the clause 'received by such member during any period of three consecutive years of creditable service.' That does not imply . . . that all compensation received for creditable service must be treated as regular compensation. This clause ensures that *only* years of creditable service are considered . . . [and] does not alter the definition of regular compensation." Similarly, the provisions regarding the accumulation of creditable service in § 14 do not alter the definition of "regular compensation received," and we agree with CRAB which observed that because "the issue in this matter does not deal with creditable service but with the definition of regular compensation and a

*ment Appeal Bd.*, 421 Mass. 344, 347-348 (1995); *Aquino* v. *Civil Serv. Comm'n*, 34 Mass. App. Ct. 538, 541 (1993); *Tilcon Mass., Inc.* v. *Commissioner of Revenue*, 30 Mass. App. Ct. 264, 269 (1991).

Because there is no conflict between G. L. c. 32, § 10 (2) (*a*), and § 14 (1) (*a*), and Hayes did not receive regular compensation from 1987 to 1992, we affirm the decision of the Superior Court.

*So ordered.*

---

determination of when [Hayes] received such regular compensation the provisions of G. L. c. 32, § 14 (1) (*a*) are not pertinent."