NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12331


PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION  vs.
CONTRIBUTORY RETIREMENT APPEAL BOARD & others.[1]


Suffolk.     November 6, 2017. - February 13, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Public Employee Retirement Administration Commission.
Contributory Retirement Appeal Board.  Retirement.  Public
Employment, Retirement, Sick leave benefits, Vacation pay,
Worker's compensation.  Words, "Regular compensation."



Civil action commenced in the Superior Court Department on
May 14, 2015.

The case was heard by Peter M. Lauriat, J., on motions for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Judith A. Corrigan, Special Assistant Attorney General, for
the plaintiff.
Michael Sacco for retirement board of Swampscott.


CYPHER, J.  The plaintiff, the Public Employee Retirement

Administration Commission (PERAC), appeals from a Superior Court

--------

[1] Retirement board of Swampscott and Robert Vernava.

judge's decision affirming a determination by the Contributory Retirement Appeal Board (CRAB) that sick or vacation payments, when used to supplement workers' compensation payments, are not "regular compensation" as defined in G. L. c. 32, § 1. PERAC argues that CRAB's decision is incorrect as a matter of law. We disagree, and for the following reasons we affirm the decision of the Superior Court judge.

Background. The relevant facts are not in dispute. From September 30, 1985, to July 7, 2012, Robert Vernava worked for the town of Swampscott's department of public works. On June 13, 2010, Vernava sustained injuries while performing job-related duties. He began receiving workers' compensation benefits the same day. In addition to the workers' compensation benefits, under G. L. c. 152, § 69, Vernava also received two hours per week of sick or vacation pay (supplemental pay) in order to maintain his union membership and life insurance.[2]

---

[2] Employees who are unable to work because of injuries sustained on the job can seek benefits in lieu of salary under the workers' compensation act. See G. L. c. 152, §§ 29 ("no compensation shall be paid for any period for which wages were earned"), 34, 34A, 35. An employee's absence from work does not automatically diminish his or her accrued vacation and sick time. Under G. L. c. 152, § 69, which governs payments in excess of workers' compensation benefits for public employees, a public employer may pay an employee receiving workers' compensation all of that employee's accrued vacation and sick time "in part until any sick leave allowance which the employee has to his credit has been used." See School Comm. of Medford v. Medford Pub. Sch. Custodians Ass'n, 21 Mass. App. Ct. 947, 948 (1986) (public employee receiving workers' compensation

Pursuant to G. L. c. 32, § 7, on February 1, 2012, the town of Swampscott filed an application seeking to retire Vernava involuntarily for accidental disability. On June 28, 2012, the retirement board of Swampscott (board) approved the application and voted to involuntarily retire Vernava due to accidental disability. Vernava received his workers' compensation benefits and supplemental pay until July 7, 2012.

Under G. L. c. 32, § 7 (2), the effective date of an employee's accidental disability retirement is the latest of the following: (1) "the date the injury was sustained;" (2) "the date six months prior to the filing of the written application for such retirement;" or (3) "the date for which he last received regular compensation for his employment in the public service." Following the board's decision to retire Vernava involuntarily, PERAC determined that Vernava's effective retirement date was July 7, 2012, because this was the last day Vernava received "regular compensation" in the form of his supplemental pay. The board, while not agreeing with PERAC's determination, was bound to follow PERAC's ruling.

---

benefits for total incapacity may not accrue rights to additional vacation and longevity pay for years in which he or she was incapacitated and receiving benefits). An employee may only receive so much of any "sick leave allowance payment as, when added to the amount of any disability compensation . . . will result in the payment to him of his full salary or wages." G. L. c. 152, § 69.

Vernava appealed from PERAC's determination to the division of administrative law appeals (DALA). DALA reversed PERAC's decision, finding that Vernava's supplemental pay did not constitute "regular compensation" under G. L. c. 32, § 1. DALA determined that Vernava last received such compensation on June 13, 2010, the date of his injury. Based on that determination, DALA set Vernava's effective accidental disability retirement date as August 1, 2011. This was because, with DALA's determination that the supplemental pay was not regular compensation, the latest occurring event under G. L. c. 32, § 7 (2), became the date six months prior to the filing of the accidental disability application, here August 1, 2011, and not the date Vernava last received regular compensation.

PERAC appealed from DALA's findings to CRAB, and CRAB upheld DALA's decision. PERAC sought judicial review of CRAB's decision pursuant to G. L. c. 30A, § 14. A Superior Court judge affirmed CRAB's decision, and PERAC appealed. We transferred the case to this court on our own motion, and now affirm the Superior Court judgment.

Discussion. The issue before us is one of statutory interpretation: whether the supplemental pay received pursuant to G. L. c. 152, § 69, constitutes "regular compensation" as defined by G. L. c. 32, § 1, when received in conjunction with

workers' compensation.[3]  "While we give weight to the experience of both PERAC and CRAB, here they offer conflicting interpretations.  Ultimately, the issue is one of statutory interpretation, which presents a question of law for the court. . . .  We are required to overturn agency decisions that are inconsistent with G. L. c. 32, § 1" (citations omitted).  Pelonzi v. Retirement Bd. of Beverly, 451 Mass. 475, 478 n.8 (2008).

We begin with the language of the statute.  See Bulger v. Contributory Retirement Appeal Bd., 447 Mass. 651, 657 (2006).  General Laws c. 32, § 1, defines "[r]egular compensation," in relevant part, as "compensation received exclusively as wages by an employee for services performed in the course of employment for his employer."[4]  PERAC argues that recurring payments of

---

[3] Our interpretation of "regular compensation" in this case is limited to the receipt of supplemental pay in connection with workers' compensation benefits, for the purpose of determining an employee's effective date of retirement under G. L. c. 32, § 7.  We need not address the effective date of retirement for public employees who are not receiving workers' compensation, such as those who voluntarily retire and use their supplemental pay before doing so.

[4] General Laws c. 32, § 1, defines "[w]ages," in relevant part as:

"the base salary or other base compensation of an employee paid to that employee for employment by an employer; provided, however, that 'wages' shall not include, without limitation, overtime, commissions, bonuses other than cost-of-living bonuses, amounts derived from salary enhancements or salary augmentation plans which will recur for a limited

accrued sick leave or vacation time constitute regular compensation. As we have held, the "straightforward and unambiguous" language of § 1 indicates that "regular compensation" is "ordinary, recurrent, or repeated payments not inflated by any 'extraordinary ad hoc' amounts such as bonuses or overtime pay." Pelonzi, 451 Mass. at 479. See Hallett v. Contributory Retirement Appeal Bd., 431 Mass. 66, 70 (2000) ("the statutory intent [behind the definition of 'regular compensation'] is clearly to exempt irregular payments of compensation from the retirement base"). For payments to constitute "regular compensation" they must also be "'ordinary' remuneration" for the work performed. Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 653 (2012), quoting Bulger, 447 Mass. at 658. Cf. Hayes v. Retirement Bd. of Newton, 425 Mass. 468, 472 n.2 (1997) (plaintiff did not receive regular compensation during time he received workers'

---

or definite term, indirect, in-kind or other payments for such items as housing, lodging, travel, clothing allowances, annuities, welfare benefits, lump sum buyouts for workers' compensation, job-related expense payments, automobile usage, insurance premiums, dependent care assistance, [one]-time lump sum payments in lieu of or for unused vacation or sick leave or the payment for termination, severance, [or] dismissal . . . amounts paid as early retirement incentives or any other payment made as a result of the employer having knowledge of the member's retirement, tuition, payments in kind and all payments other than payment received by an individual from his employing unit for services rendered to such employing unit, regardless of federal taxability . . . ."

compensation "merely because the city continued to carry him on its payroll").

PERAC contends that, by the statute's own terms, the only relevant exception to the definition of "[w]ages" in G. L. c. 32, § 1, as used in "regular compensation," is sick and vacation time payments that are received as a "[one]-time lump sum payment," which Vernava did not receive. This is not, however, the only exception contained in the definition of "wages" under the statute. Another exception is for "payments in kind and all payments other than payment received by an individual from his employing unit for services rendered to such employing unit." As discussed infra, Vernava, as an injured employee on workers' compensation, no longer possessed the ability to provide services to his employer. Moreover, that the supplemental payments at issue are not expressly excluded by statute does not preclude supplemental payments from falling outside the scope of "regular compensation." See Pelonzi, 451 Mass. at 481-482 (holding personal use value of employer-issued motor vehicle was not regular compensation even though this value was not expressly addressed by Legislature). This is so especially because the statutory definition of "wages" states that its list of exceptions applies "without limitation." G. L. c. 32, § 1. See Rodman v. Rodman, 470 Mass. 539, 542 n.5 (2015), quoting Condon v. Haitsma, 325 Mass. 371, 373 (1950)

(reasoning that "Legislature is presumed to be aware of 'preexisting law and the decisions of this court'").

Further, under PERAC's own regulations, regular compensation must be "of indefinite duration." See 840 Code Mass. Regs. § 15.03(1)(a)(3) (2010). In contrast, sick and vacation time is limited in amount; Vernava used what remained to supplement his workers' compensation payments while out on disability.

PERAC also argues that CRAB misapplied three cases in reaching its conclusion that sick and vacation pay does not constitute regular compensation: Zelesky v. Commissioner of the Div. of Pub. Employee Retirement Admin., 30 Mass. App. Ct. 106 (1991); Gendron vs. Worcester Regional Retirement Bd., No. CR-06-1126 (DALA June 27, 2008); and McLoughlin vs. State Bd. of Retirement, No. CR-09-99 (DALA June 7, 2013). We agree with CRAB that these cases apply and support its conclusion.

In Zelesky, 30 Mass. App. Ct. at 109-110, the Appeals Court held that supplemental payments to injured county jail employees received under G. L. c. 126, § 18A,[5] did not constitute regular compensation. The court reasoned that "[i]mplicit in [§ 18A's] language is the assumption that workers' compensation and the

---

[5] General Laws c. 126, § 18A, provides that a county jail employee who is injured by a prisoner shall receive compensation equal to the difference between the employee's workers' compensation benefits and his or her "regular salary."

supplemental payment are not themselves regular compensation, but instead are a substitute for an employee's 'regular salary.'" Zelesky, supra, quoting G. L. c. 126, § 18A. We agree with the Superior Court judge here that, like § 18A, the language of G. L. c. 152, § 69, under which Vernava was entitled to receive his supplemental pay, implies that supplemental pay is "a substitute for an employee's 'regular salary.'" See Zelesky, supra. Vernava's supplemental pay was not remuneration for work performed; rather, it was made only where Vernava was unable to perform work for his employer due to injury. See Boston Ass'n of Sch. Adm'rs & Supervisors v. Boston Retirement Bd., 383 Mass. 336, 341 (1981) (holding regular compensation "refers to remuneration geared to work or services performed"); Zelesky, supra at 108-109.

DALA[6] relied on Zelesky when deciding the Gendron case, in which DALA held that payments from the petitioner's accrued sick time used to supplement his workers' compensation benefits were not regular compensation and should not be considered to determine the effective date of the petitioner's retirement. PERAC attempts to distinguish the Gendron decision, citing the fact that the petitioner there did not receive a regular and

_____

[6] Under G. L. c. 32, § 16 (4), a Division of Administrative Law Appeals decision that is not objected to by any party or taken up by the Contributory Retirement Appeal Board (CRAB) on its own initiative becomes the final decision of CRAB.

recurring payment akin to Vernava's supplemental pay. However, that decision clarifies that while the petitioner was receiving workers' compensation, "he had regular retirement deductions taken from either his accumulated vacation pay or from the supplemental sick leave payments." See Gendron, supra at 2. The petitioner's employer in that case could not have taken "regular retirement deductions" without regular payments from which to take those deductions. PERAC also contends that the Gendron decision is distinguishable because much or all of that petitioner's sick time was obtained via "a 'supplemental sick leave' payment" that he did not earn, but that he had received from his employer because he did not have many sick hours accrued at the time of his injury. However, that petitioner also received supplemental pay in the form of accrued vacation time, and DALA found that neither the petitioner's supplemental sick pay nor accrued vacation pay constituted regular compensation.

PERAC further argues that CRAB was wrong to apply the McLoughlin decision. In that decision, DALA held that sick and vacation payments received years after the petitioner was able to perform his job duties were not "ordinary and routine" and did not constitute regular compensation. See McLoughlin, supra at 8. PERAC attempts to differentiate Vernava from the petitioner in the McLoughlin case and argues that it was wrong

for the DALA magistrate in that case to add a limiting qualification to regular compensation. We disagree. In the McLoughlin case, DALA relied on Zelesky and the Gendron decision to apply sound reasoning to its decision. At the core of all three cases is the premise that supplemental pay received while an employee is no longer able to provide employment services for his or her employer does not constitute regular compensation. In these instances, as with Vernava, the employee is not merely out sick or taking a vacation, but is not able to perform services for the employer.

PERAC's remaining arguments focus on its assertion that services have been rendered here for the time involved, thereby bringing the supplemental pay within the definition of regular compensation. PERAC contends that supplemental pay received in conjunction with workers' compensation is earned prior to the employee's injury and that, whether an employee is on workers' compensation or is simply taking a day off from work, an employee receiving earned leave time is performing the same service for the employer. However, when an employee is in Vernava's situation -- injured, on workers' compensation, and inherently unable to provide services to his or her employer -- that employee has ceased providing services to the employer. Similarly, one cannot obtain workers' compensation without first performing services for his or her employer, but we have

previously held workers' compensation is not regular compensation.  See Hayes, 425 Mass. at 472.  An attribute of both workers' compensation and supplemental pay is that both are earned by providing services to the employer and both are received while the employee is no longer able to provide those services.  Therefore, PERAC's argument regarding past services rendered is unavailing.

We also do not find persuasive PERAC's concern that confusion will ensue if CRAB's interpretation is upheld.

Judgment affirmed.