APPEALS COURT 
 
 STEPHEN O'MALLEY & another[1] vs. CONTRIBUTORY RETIREMENT APPEAL BOARD & another[2]

 
 Docket:
 23-P-1147
 
 
 Dates:
 June 6, 2024 – October 7, 2024
 
 
 Present:
 Blake, Neyman, & Sacks, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Contributory Retirement Appeal Board. Division of Administrative Law Appeals. Public Employment, Accidental disability retirement. School and School Committee, Retirement benefits. Labor, Overtime compensation. Administrative Law, Agency's interpretation of statute. Practice, Civil, Judgment on the pleadings.
 
 

       Civil action commenced in the Superior
Court Department on February 5, 2020. 
      The case was heard by Paul D. Wilson, J.,
on a motion for judgment on the pleadings. 
Praven Shenoy for
the plaintiffs.
Gregory F. Galvin
for retirement board of Brockton.
      Andrew Batchelor, Assistant Attorney
General, for Contributory Retirement Appeal Board.
      NEYMAN, J. 
We consider whether traffic duty pay for work performed by the
plaintiffs, Stephen O'Malley and Thomas Lambert, must be included in the
calculation of the plaintiffs' retirement allowances.  This determination hinges on whether traffic
duty pay constitutes "regular compensation" within the meaning of
G. L. c. 32, § 1.  We
conclude that the plaintiffs' traffic duty pay does not qualify as
"regular compensation" under the statute.  Accordingly, we affirm the judgment.  
      Background.  Stephen O'Malley commenced employment with
the Brockton school department as a school police officer on February 6, 1985,
and in 1990 began working as a school crossing guard in addition to his school
police officer duties.  Thomas Lambert
commenced employment with the Brockton school department as a school custodian
on March 11, 2002, and in 2008 began working as a school crossing guard in
addition to his school custodian duties. 
Both O'Malley's and Lambert's traffic duty pay "[was] calculated at
time and a half, the same rate for overtime pay."  O'Malley and Lambert worked irregular hours
as school crossing guards, and neither of their employment contracts required
that they perform traffic duty.  
      In 2009 and 2010, O'Malley and Lambert,
respectively, suffered injuries at work and applied for accidental disability
retirement based on those work-related injuries.  Their "accidental disability pension[s]
[were] computed according to 
[ ]
G. L. c. 32, § 7 (2) (a) (ii)."  The Public Employee Retirement Administration
Commission (PERAC) calculated O'Malley's and Lambert's retirement allowances
"based on the amount that the [retirement] [b]oard [of Brockton] had reported
as 'regular compensation,' and excluded traffic duty payments."  PERAC made this calculation pursuant to
regulations implemented in June 2010, which provided updated guidance as to
what constitutes "regular compensation" under G. L. c. 32.  See 840 Code Mass. Regs.
§ 15.03 (2010).[3]  
      O'Malley and Lambert filed appeals with
the retirement board of Brockton (board), requesting that it include traffic
duty pay as part of the plaintiffs' regular compensation in the calculation of
their retirement benefits.  After the
board denied the plaintiffs' appeals, O'Malley and Lambert appealed to the
Contributory Retirement Appeal Board (CRAB), which assigned their cases to the
Division of Administrative Law Appeals (DALA). 
Following a hearing at which both O'Malley and Lambert testified, and
documentary evidence was admitted into the administrative record, DALA issued a
decision upholding the board's exclusion of traffic duty pay from the
calculation of the plaintiffs' retirement benefits.  O'Malley and Lambert appealed DALA's decision
to CRAB.  CRAB adopted DALA's findings,
ruled that the "traffic duty payments were irregular payments paid on an
hourly basis and are akin to overtime payments," and affirmed DALA's
decision.  O'Malley and Lambert then
brought the present action in the Superior Court pursuant to G. L.
c. 30A, § 14, for review of the CRAB decision.  Following a hearing, a Superior Court judge
denied the plaintiffs' motion for judgment on the pleadings and ordered the
entry of judgment in favor of the defendants, CRAB and the board.  Judgment for the defendants entered, and
O'Malley and Lambert filed a timely notice of appeal.  
      Discussion.  1. 
Standard of review.  It is well
established that judicial review of an agency decision pursuant to G. L.
c. 30A is "narrow and deferential."  Buchanan v. Contributory Retirement Appeal
Bd., 65 Mass. App. Ct. 244, 246 (2005). 
Plaintiffs have the "heavy burden" of demonstrating that the
agency's decision is invalid.  Massachusetts
Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263-264
(2001).  On appeal, CRAB's decision must
stand unless it is unsupported by substantial evidence or based on an error of
law.  See G. L. c. 30A,
§ 14 (7); Murphy v. Contributory Retirement Appeal Bd., 463 Mass.
333, 344 (2012).  "It is not our
province to determine whether the CRAB decision is based on the weight of the
evidence, nor may we substitute our judgment for that of CRAB" (quotations
and citation omitted).  Murphy,
supra.  We give due weight to the
agency's experience and specialized knowledge, as well to the discretionary
authority conferred upon it.  See
G. L. c. 30A, § 14 (7); Murphy, supra at 344-345.  Indeed, "[i]n the notoriously difficult,
sometimes tortuous field of retirement rights and calculations, there is
particular reason for giving deference to the agency's expertness."  Evans v. Contributory Retirement Appeal Bd.,
46 Mass. App. Ct. 229, 233 (1999). 
"However, in deferring to the administrative body, we do not
abdicate our judicial responsibility." 
Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass.
740, 744 (2010).  
      2. 
Regular compensation.  The
plaintiffs argue that they had reasonable expectations that their traffic duty
pay constituted regular compensation because prior to the 2010 PERAC
regulations, the board had included traffic duty pay when calculating regular
compensation for other employees, and retirement contributions had been
deducted from plaintiffs' traffic duty pay and forwarded to the board.[4]
      We begin our analysis by looking to the
plain language of the statute.  See
Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600,
604 (2019).  "Regular
compensation" is defined, in relevant part, as "compensation received
exclusively as wages by an employee for services performed in the course of
employment for his employer." 
G. L. c. 32, § 1. 
"Wages" are "the base salary or other base compensation
of an employee paid to that employee for employment by an employer; provided,
however, that 'wages' shall not include . . . [inter alia,] overtime,
commissions, [or] bonuses other than cost-of-living bonuses."  G. L. c. 32, § 1.  "As we have held, the 'straightforward
and unambiguous' language of § 1 indicates that 'regular compensation' is
'ordinary, recurrent, or repeated payments not inflated by any
"extraordinary ad hoc" amounts such as bonuses or overtime
pay.'"  Public Employee Retirement
Admin. Comm'n v. Contributory Retirement Appeal Bd., 478 Mass. 832, 835 (2018),
quoting Pelonzi v. Retirement Bd. of Beverly, 451 Mass. 475, 479 (2008).  "Where the statutory meaning is
unambiguous we are constrained to follow it . . . ."  Providence & Worcester R.R. Co. v. Energy
Facilities Siting Bd., 453 Mass. 135, 142 (2009).  
      As found in the DALA decision, which was
adopted by CRAB and supported by the administrative record, the plaintiffs
could work traffic duty whenever they chose to do so, traffic duty was not a
part of their contractual duties, their hours varied, and compensation for
traffic duty was irregular and akin to overtime pay.  In addition, the plaintiffs were paid their
overtime rate for traffic duty.  In view
of these findings, we agree that the traffic duty payments lack the
"ordinary" nature required for an employee's regular compensation
under G. L. c. 32, § 1. 
Indeed, our precedent supports this conclusion.  See Hallett v. Contributory Retirement Appeal
Bd., 431 Mass. 66, 70 (2000) ("In G. L. c. 32, § 1, the definition of
'[r]egular compensation' excludes bonus, overtime, or severance
pay. . . .  Hourly
compensation paid on an irregular basis is more akin to overtime payments than
to annual salary").[5]  See also
Public Employee Retirement Admin. Comm'n, 478 Mass. at 835.  
      Nonetheless, citing Colo v. Contributory
Retirement Appeal Bd., 37 Mass. App. Ct. 185, 188 (1994), the plaintiffs insist
that "the reasonable expectations of a retiree control[], even if PERAC's
interpretation of G. L. c. 32 resulted in denying
benefits."  Otherwise stated, the
plaintiffs contend that the board's practice of including traffic duty pay when
calculating regular compensation created a reasonable expectation on which they
both relied.  They contend that that
expectation obviates the need to determine whether traffic duty pay is regular
compensation.  This argument fails for
various reasons.  
      First, for the reasons stated above, the
plaintiffs' argument is inconsistent with the language of G. L.
c. 32.  Second, as the plaintiffs
acknowledged at oral argument, their claims are not predicated on equitable or
estoppel principles.  Indeed, such an
argument would be unavailing, as equitable concerns may not trump a statutory
rule.  See Plymouth Retirement Bd., 483
Mass. at 604, quoting Joslyn v. Chang, 445 Mass. 344, 352 (2005) ("[T]he
duty of the court [is] to adhere to the very terms of the statute, and not,
upon imaginary equitable considerations, to escape from the positive
declarations of the text").  Third,
Colo is distinguishable from the present case. 
That case involved the application of a 1964 change in the retirement
law itself to the plaintiff who commenced work as a "call fire
fighter" in 1957.  Colo, 37 Mass.
App. Ct. at 185-186, 190.  In 1964, the
Legislature amended G. L. c. 32, § 4 (2) (b), which
had the effect of "limit[ing] the authority of a retirement board in
determining how much creditable service to grant call fire fighters, among
others."  Colo, supra at
186-187.  When the plaintiff retired
after more than thirty-two years of service, CRAB determined that "he
should be denied creditable service for the period after the effective date of
the [amendment to the] statute in 1964." 
Id. at 186.  The court reversed a
Superior Court judgment affirming the CRAB decision because, on the particular
facts of that case, the plaintiff had a reasonable expectation under the
statute as it existed at the time he began his service (and for seven years
thereafter) "that his service as a call fire fighter would continue to
count as creditable service as long as deductions were being taken from his
salary and until his employment terminated."  Id. at 191. 
Critical to that outcome, the court grounded its opinion in a statutory
right held by the plaintiff that the Legislature changed during the course of
the plaintiff's service.  See id. at
188-189 ("retirement plans for public employees have been treated in
Massachusetts . . . as irrevocable contractual commitments rather
than mere gratuities, and where a retirement plan has generated material
expectations on the part of employees, they should be respected and not be
subject to significant legislative modification" [emphasis added;
quotation and citation omitted]).      
      In the present case, by contrast, the
plaintiffs never held a statutory right to having their traffic duty payments
count as "regular compensation." 
Unlike the call firefighter in Colo whose expectation was based on
statutory authority, the plaintiffs here base their expectation solely on the
board's erroneous practice of deducting retirement contributions from the
plaintiffs' traffic duty pay.  Although
there may be a degree of facial appeal to the equitable nature of the
plaintiffs' claim, expectations grounded in an administrative board's error are
not the same as expectations grounded in a statutory right.  See Plymouth Retirement Bd., 483 Mass. at
604.  Put simply, the board's incorrect
view that traffic duty payments constituted "regular compensation" is
not a tenable basis to ignore the language and meaning of "regular
compensation" under G. L. c. 32. 
See Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 646
(2000) ("An agency regulation that is contrary to the plain language of
the statute and its underlying purpose may be rejected by the
courts").  
      3. 
Substantial evidence.  The
plaintiffs also contend that certain findings in the DALA decision, adopted by
CRAB, were not supported by substantial evidence and thus we should set aside
the decision and remand for further proceedings.  The argument is unpersuasive.  
      "In order to be supported by
substantial evidence, an agency conclusion need not be based upon the clear
weight of the evidence . . . or even a preponderance of the evidence,
but rather only upon reasonable evidence, . . . i.e., such evidence
as a reasonable mind might accept as adequate to support a conclusion, after
taking into consideration opposing evidence in the record" (quotations
omitted).  Lisbon v Contributory
Retirement Appeal Bd., 41 Mass. App. Ct. 246, 257 (1996), quoting G. L.
c. 30A, § 1 (6).  
      Here, the plaintiffs contest DALA's
findings that their traffic duty payments were irregular, paid on an hourly
basis, and akin to overtime payments.  As
discussed supra, ample evidence in the administrative record supports the
findings that the plaintiffs were paid hourly for their traffic duty work;
their hours were inconsistent and differed at all relevant times; and they were
paid an overtime rate for the work.  As
explained in the DALA decision, "the amounts [of the payments made to the
plaintiffs] differed based on how many hours the [plaintiffs] worked, they were
not regular, ordinary, and normal.  The
traffic payments were not stipendiary, but changed according to the
[plaintiffs'] choice."  Where the
record supports these determinations, we conclude that the DALA decision was
supported by substantial evidence, and judgment properly entered for the
defendants.[6]
Judgment
affirmed.

footnotes

[1] Thomas
Lambert.  

[2] Retirement
board of Brockton.  

[3] PERAC's June
17, 2010 memorandum concerning the regulations read, in relevant part:  "In determining whether payments on or
after July 1, 2009 are 'regular compensation' for purposes of Chapter 32,
Retirement Boards must consider the criteria contained in 840 [Code Mass. Regs.
§] 15.03(3)(b)."    

[4] As stated in
the DALA decision, the board has been holding the plaintiffs' "retirement
deductions pending the outcome of the appeals."  At oral argument, the defendants confirmed
that those deductions will be returned to the plaintiffs if this appeal is
decided in the defendants' favor.  

[5] The
plaintiffs maintain that Hallett, 431 Mass. at 70, is inapposite because it
concerns "regular compensation" provisions in G. L. c. 32,
§ 1, that are applicable only to schoolteachers.  We disagree. 
In Hallett, supra, the court analyzed the statutory definition of
"regular compensation," and the legislative intent behind G. L.
c. 32: 
"[T]he
statutory intent is clearly to exempt irregular payments of compensation from
the retirement base.  (In G. L.
c. 32, § 1, the definition of '[r]egular
compensation'
excludes bonus, overtime, or severance pay.) 
Hourly compensation paid on an irregular basis is more akin to overtime
payments than to annual salary."  
      Moreover, the Supreme Judicial Court has
relied on the reasoning in Hallett in defining "regular compensation"
in disability retirement cases involving employees other than teachers.  See Public Employee Retirement Admin. Comm'n,
478 Mass. at 835 (citing Hallett, in case involving public works employee, for
broad proposition that "the statutory intent [behind the definition of
'regular compensation'] is clearly to exempt irregular payments of compensation
from the retirement base"); Rotondi v. Contributory Retirement Appeal Bd.,
463 Mass. 644, 652 (2012) (same, in case involving town moderator).  

[6] The
plaintiffs' contention that DALA reviewed the incorrect timeframe when
considering their traffic duty hours is unavailing.  As the plaintiffs acknowledged, regardless of
the timeframe considered, the evidence before DALA showed that (a) the
plaintiffs' traffic duty hours were inconsistent and varied, and (b) they could
choose when to work or not work traffic duty at all relevant times.